IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOSHUA HARMAN, on behalf of § | | |
| The UNITED STATES OF AMERICA, § | | |
| § | | |
| PLAINTIFF/Relator, § | CIVIL ACTION NO. _____ | |
| § | | |
| V. § | FILED UNDER SEAL | |
| § | 31 U.S.C. §§ 3729-32 | |
| TRINITY INDUSTRIES, INC, § | JURY TRIAL DEMANDED | |
| § | | |
| DEFENDANT § | | |

# FALSE CLAIMS ACT COMPLAINT
# "QUI TAM"

**TO THE HONORABLE JUDGE OF SAID COURT:**

The United States of America, by and through *qui tam* Relator, Joshua Harman, brings this action under 31 U.S.C. §§ 3729-32 (The "False Claims Act") to recover from Trinity Industries, Inc. ("Trinity") for all damages, penalties, and other remedies available under the False Claims Act on behalf of the United States and himself and would show unto the Court the following:

## PARTIES

1. Relator, Joshua Harman ("Harman"), is an individual and citizen of the United States of America residing in Swords Creek, Virginia.

2. Defendant Trinity Industries, Inc. is a Delaware corporation authorized to do business in Texas with its principal place of business located at 2525 Stemmons Freeway, Dallas, Texas 75207. Trinity's Texas agent for service of process is CT Corp System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201-4234.

1

## JURISDICTION AND VENUE

3. This Court maintains subject matter jurisdiction over this action pursuant to 31 U.S.C. §3732(a) (False Claims Act) and 28 U.S.C. § 1331 (Federal Question).

4. Venue is proper in this Court under 31 U.S.C. § 3732(a) because Trinity manufactures and sells guardrail systems throughout the Eastern District of Texas as well as throughout the United States.

5. Harman is the original source of and has direct and independent knowledge of all publicly disclosed information that the allegations herein are based upon. Harman has personally gathered all the documentation and photographs substantiating the allegations herein. Additionally, he has voluntarily provided all such information to the Government prior to the filing of this action.

## FACTS

6. Trinity is in the business of manufacturing various highway safety and construction products for use across the United States. In particular, Trinity manufactures the ET-Plus guardrail end terminal ("ET-Plus") under an exclusive license agreement from Texas A & M University.[1] The ET-Plus is commonly referred to as a "head" and when used in conjunction with the standard "W" style guardrail seen throughout the roads and highways of America is designed to absorb and dissipate the energy of a vehicular impact. Upon impact the guardrail is extruded through the head and flattened out into a ribbon, thus absorbing the majority of the collision energy. The following picture illustrates an early model ET-Plus performing correctly:

---

[1] *See* http://highwayguardrail.com/products/etplus.html



7. The ET-Plus is actually a modified version of what was originally designed and marketed as the ET-2000. **See Exhibit A** (Presentation which includes history of the ET modifications). This newly redesigned head being approximately 100 pounds lighter than the ET-2000 was submitted to the Federal Government and approved for use in January of 2000. The original production of the ET-Plus, built to the approved specifications, was overall very successful. Not only did it work for an initial impact, it continued to work if struck again in a separate incident but before maintenance crews were able to repair it. Shown below is a top view drawing of the head itself:



8. The ET-Plus, along with each and every other product used on the National Highway System, must undergo rigorous testing to determine and validate crashworthiness before the product may be placed on the National Highway System. The Federal Highway Administration, a division of government under the U.S. Department of Transportation, along with other state and federal organizations, are charged with establishing the crashworthiness criteria for products such as the ET-Plus. Once a product is approved for use along the National Highway System its design specifications cannot be altered. If altered, the product must undergo additional testing and approval prior to placement on the National Highway System.

9. Beginning in early 2005, a different ET-Plus started appearing along the National Highway System. In particular, this head was manufactured with a four inch feeder chute and a shorter overall height.

**Redesign Into Current Production**

The following explains how a 2005 redesign changed an early production ET-Plus into a current production ET-Plus.

In addition, due to the shortened height, the feeder rails are actually inserted into the head .75

inches rather than being welded flush to it. This drastically reduced the overall space of the feeder chute.

10. Trinity twice petitioned the FHWA for modifications to other components of the overall ET-Plus system, once in September of 2005 and then again in August of 2007. **See Exhibit B** (CC-94 and CC94a). These modifications, however, primarily dealt with the breakaway post system that upholds the guardrail near the ET-Plus head. Nowhere in these design changes does Trinity mention the reduced feeder chute size changes. In fact, to date Harman has been unable to locate any documentary proof that Trinity ever officially petitioned the Government for approval to the feeder chute changes outlined above. The reason is simple, the documentation does not exist. As explained more fully in ¶ 14 below, Trinity failed to submit the modifications for approval.

11. The problem with the ET-Plus as modified in 2005 is that the guardrail does not feed properly through the chute due to the reduced area of the feeder chute itself. This causes the guardrail to "throat lock" in the head during impact. Once throat locked, the energy of the crash is diverted elsewhere usually causing the guardrail to double over on itself or protrude through the crashing vehicle. If the guardrail and head assembly protrude like a spear through the vehicle, the inevitable result is usually death or serious bodily injury to the persons in the vehicle. The following pictures illustrate the front and back of a vehicle striking a guardrail *after* it had been hit previously but before maintenance crews could repair the head and rail:



On the other hand, if the guardrail doubles over on itself after throat lock, it creates a new hazard for other approaching vehicles that may encounter the head before a maintenance crew can repair it. A doubled over guardrail after throat lock is shown below:



12. It is believed that there literally hundreds of thousands of these defective heads on the National Highway System as well as state and local roadways. The potential for danger is obvious and inevitable. Harman is personally aware of fatalities involving the modified ET-Plus in Tennessee, Virginia, Kentucky, and possibly Texas. In over 100 accidents involving the modified ET-Plus, Harman has not seen the head function properly.

13. The only logical conclusion as to why Trinity would modify the ET-Plus is to save manufacturing costs. It is believed that the 4" inch C channel used to construct the feeder chute is substantially cheaper than 5" inch C channel. Trinity, by and through local highway

contractors and the individual States implementing federally funded highway projects, literally made millions in revenue off of this defective product at the expense of the United States Government and the American taxpayer. Improvements made to the National Highway System are typically made by the individual States that bid out and pay for the projects and then seek reimbursement from the federal government. Individual highway contractors would bid on projects that contained quotes for material supplied by Trinity that was alleged to conform to the federal standards for crashworthiness. Once awarded the contract, the highway contractor would purchase the defective ET-Plus head from Trinity and install it along the specified roadway. In the end, federal dollars were and continue to be paid to Trinity to purchase the faulty ET-Plus heads based on Trinity's false statements and conduct. This constitutes a false claim under the FCA. *See U.S. v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003), *cert. denied*, 541 U.S. 936 (2004).

14. Harman has made a conscious effort to bring awareness to this issue. Specifically, over the past month Harman has had numerous contacts with Mr. Nick Artimovich, II regarding the complaints made against Defendant herein. Mr. Artimovich is a highway engineer for the Federal Highway Administration, Office of Safety Technologies.[2] Additionally, he is the program director for crashworthiness testing of roadside hardware used on the National Highway System. Mr. Artimovich admitted to Harman that the ET-Plus as modified has never been officially submitted or approved for use on the National Highway System by the FHWA. Lastly,

---

[2] Nicholas Artimovich, II, Highway Engineer, Office of Safety Technologies, Federal Highway Administration HSST, 1200 New Jersey Avenue SE, Room E71-322, Washington, DC 20590. email: nick.artimovich@dot.gov, phone: 202-366-1331, fax: 202-366-3222, web: http://safety.fhwa.dot.gov

as recently as three weeks ago at the American Traffic Safety Services Association[3] annual Expo in Florida, Harman provided a summary presentation of the facts herein to the following state highway officials: New Hampshire DOT, CalTrans, Florida DOT, Oklahoma DOT, North Carolina DOT, Pennsylvania DOT, and Mississippi DOT.

15. Harman is also the owner and author of a website entitled www.failingheads.com which contains most of the information found in this complaint. This website explains the history of the ET head product line and the current failures that are being seen every day. The website just came on live in late January of 2012 and has restricted access. Harman is also the owner and author of a website entitled www.make-a-way.phrop.com which contains over 5000 photographs of accidents involving the modified ET-Plus throughout the United States.

## CAUSE OF ACTION

*Violations of the False Claims Act*

16. Harman incorporates and re-alleges all of the foregoing allegations herein.

17. Based upon the acts described above, Defendant knowingly violated on or more of the following:

> a. Knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval;
>
> b. Knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

18. The United States, unaware of the falsity of these claims, records, and statements made by the Defendant, and in reliance on the accuracy thereof, paid money to Defendant and/or

---

[3] ATSSA is a highway product industry trade group. *See www.atssa.com.*

various highway contractors for the fraudulent claims. These payments were most likely made to the various States under the Federal Aid Highway Program.[4]

19. The United States and the general public have been damaged as a result of Defendant's violations of the False Claims Act.

## **PRAYER**

20. For the reasons set forth above, Harman, on behalf of the United States, respectfully requests this Court to find that Defendant has damaged the United States Government as a result of its conduct under the False Claims Act. Harman prays that judgment enter against Defendant for all applicable damages, including but not limited to the following:

   a. Actual damages in an amount sufficient to cover the cost to recall and replace every defective guardrail product of Defendant placed on the public roadways of the United States.

   b. Civil Penalties in an amount of three times the actual damages suffered by the Government.

   c. Relator seeks a fair and reasonable amount of any award for his contribution to the Government's investigation and recovery pursuant to 31 U.S.C. §§ 3730(b) and (d) of the False Claims Act.

   d. Attorney's fees and costs awarded to Relator.

   e. Pre-judgment and post judgment interest.

   f. All other relief on behalf of the Relator and/or United States Government to which they may be entitled at law or equity.

---

[4] http://www.fhwa.dot.gov/reports/financingfederalaid/limit.htm

Respectfully Submitted,


By:_____/s/ JBM_____
Josh B. Maness
Texas Bar No. 24046340
P.O. Box 1785
Marshall, Texas  75671
Tel. (903) 407-8455
Fax. (877)320-5751
manessjosh@hotmail.com

*Attorney for Relator*


**CERTIFICATE OF SERVICE**

I, Josh Maness, certify that a true and correct copy of the foregoing has been served on counsel for all parties via the Court's CM/ECF system this the 6th day of March 2012. Additionally, the following parties were served via CMRRR:

Hon. Eric Holder
Attorney General of the United States
U.S. Dept. of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

Hon. Jim Middleton and/or Hon. Randi Rusell
AUSA for the Eastern Dist. of Texas
110 N. College, Suite 700
Tyler, Texas 75702

Hon. Randy Ramseyer
AUSA for the Western Dist. of Virginia
180 W. Main Street
Abingdon, Virginia 24210


_____/s/ JBM_____
Josh B. Maness