**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA EX REL. JOSHUA HARMAN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:12-CV-0089 |
| TRINITY INDUSTRIES, INC. AND TRINITY HIGHWAY PRODUCTS, LLC, | § § § § | |
| Defendants. | § | |

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND MEMORANDUM OF LAW IN SUPPORT**

Ethan L. Shaw
Texas Bar No. 18140480
SHAW COWART LLP
1609 Shoal Creek Blvd., Ste. 100
Austin, Texas 78701
Telephone:  (512) 499-8900
Fax:  (512) 320-8906 Fax
elshaw@shawcowart.com

J. Mark Mann, Esq.
Texas Bar No. 12926150
THE MANN FIRM
300 West Main Street
Henderson, Texas 75652
Telephone: (903) 657-8540
Fax: (903) 657-6003
MM@themannfirm.com

Mike Miller
Texas Bar No. 14101100
201 W. Houston St.
Marshall, Texas 75670
Telephone:  (903) 938-4395
Fax: (903)938-3360
mikem@millerfirm.com

Russell C. Brown, Esq.
Texas Bar No. 03167510
THE LAW OFFICES OF
RUSSELL C. BROWN, P.C.
P.O. Box 1780
Henderson, Texas 75653-1780
Telephone:  903.657.8553
Fax:  903.655.0218
russell@rcbrownlaw.com

Sarah R. Teachout
Texas Bar No. 24008134
Arnold Spencer
Texas Bar No. 00791709
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4624
Telephone:  214-969-2800
Fax:  214-969-434
steachout@akingump.com
aspencer@akingump.com

Heather Bailey New
Texas Bar No. 24007642
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas  75219
Telephone:  214.651.5132
Fax:  214.200.0530
heather.new@haynesboone.com

**Attorneys for Defendants, Trinity Industries, Inc. and Trinity Highway Products, LLC**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

ABBREVIATIONS ..................................................................................................... iv

TABLE OF AUTHORITIES ........................................................................................ v

INTRODUCTION ....................................................................................................... 1

STATEMENT OF ISSUES ......................................................................................... 3

STATEMENT OF FACTS ........................................................................................... 3

I.      The Parties and the ET-Plus. ....................................................................... 3

II.     Harman alleges that Trinity "secretly redesigned" the ET-Plus without
        disclosing those changes to the FHWA in 2005. ........................................ 4

III.    The FHWA finds the ET-Plus crashworthy and acceptable for use on the
        National Highway System. ........................................................................... 5

IV.     After receiving notice of Harman's allegations, the FHWA reaffirmed its
        acceptance of the ET-Plus and the United States Government declined to
        intervene........................................................................................................ 8

SUMMARY OF THE ARGUMENT ........................................................................... 9

ARGUMENT ............................................................................................................... 10

I.      Overview of the False Claims Act.................................................................. 10

II.     The Complaint Should Be Dismissed for Lack of Subject Matter
        Jurisdiction Under Rule 12(b)(1) Because Harman's Allegations are Based
        on Public Disclosures and Harman is not an Original Source. ...................... 11

        A.      Harman admits his Complaint is based upon public disclosures.......... 12

        B.      Harman is not an original source. ....................................................... 16

III.    Harman's Claims Should Be Dismissed Under Rule 12(b)(6) Because He
        Has Not Stated a Claim for Violation of the FCA. ........................................ 18

        A.      The Rule 12(b)(6) pleading standard. ................................................. 19

        B.      Harman has not alleged that Trinity made a false statement or
                claim for payment to the United States government............................ 20

1.     Harman fails to identify any claim for payment to the government...................................................................................20

2.     Harman fails to allege a false statement or document that was used to get a claim paid.............................................................22

3.     Harman does not allege that the United States government paid any money based on a purported false statement or claim by Trinity. .................................................................23

C.     Harman's Complaint fails to state an FCA claim based on Trinity's 2005 submission to the FHWA...................................................25

D.     Harman's Complaint is barred by the statute of limitations.................................28

E.     Harman has not and cannot plead that any false or fraudulent statement by Trinity was material to a payment decision by the United States government. ...............................................................30

F.     A private litigant cannot use the FCA to circumvent the FHWA's decision-making authority. .................................................................32

IV.   Harman's Claims Should be Dismissed Because He Failed to Plead His FCA Claim With Particularity Under Rule 9(b). ..........................................................34

A.     The Rule 9(b) pleading standard.......................................................34

B.     Harman does not allege with particularity that Trinity submitted a false representation or claim for payment. .........................................................36

C.     Harman does not allege the elements of scienter or materiality with particularity...............................................................................37

D.     Harman fails to plead any allegations specific to either defendant. ....................39

CONCLUSION.................................................................................40

CERTIFICATE OF SERVICE ................................................................42

APPENDIX ...................................................................................43

# ABBREVIATIONS

| | |
|---|---|
| Relator Joshua Harman | "Harman" or "Relator" |
| Defendant Trinity Highway Products, LLC | "Trinity Highway" |
| Defendant Trinity Industries, Inc. | "Trinity Industries" |
| Trinity Highway and Trinity Industries, collectively | "Trinity" |
| Texas A&M University | "Texas A&M" |
| Texas A&M Transportation Institute | "TTI" |
| False Claims Act | "FCA" |
| PowerPoint presentation authored by Harman entitled "Failure Assessment of Guardrail Extruder Terminals" | "Presentation" |
| National Highway System | "NHS" |
| Federal Highway Administration | "FHWA" |
| National Cooperative Highway Research Program Report 350 | "NCHRP 350" |
| *Trinity Industries v. Harman,* Case No. 2:12-cv-00046, filed Jan. 30, 2012 (E.D. Tex.) | "Defamation Lawsuit" |
| *Trinity Industries, Inc., et al. v. SPIG Industry, LLC,* Case No. 1:11-cv-00937, filed Sept. 2, 2011 (E.D. Va.) | "Patent Lawsuit" |
| Amended False Claims Act Complaint "Qui Tam" filed May 16, 2013 | "Complaint" |
| False Claims Act Complaint "Qui Tam" filed March 6, 2012 | "Original Complaint" |
| Trinity's Appendix in Support of Motion to Dismiss, filed contemporaneously herewith | "(App. ___)" |

iv

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*,
   115 Fed. Appx. 662 (5th Cir. 2004) ................................................................. 38

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................... 19, 22, 23, 24

*Conner v. Salina Reg'l Health Ctr.*,
   459 F. Supp. 2d. 1081 (D. Kan. 2006) ......................................................... 32-33

*Davis v. Bayless*,
   70 F.3d 367 (5th Cir. 1995) ................................................................................ 5

*Dorsey v. Portfolio Equities Inc.*,
   540 F.3d 333 (5th Cir. 2008) ............................................................................ 38

*Fed. Recovery Servs., Inc. v. Crescent City E.M.S.*,
   72 F.3d 447 (5th Cir. 1995) .............................................................................. 16

*Fernandez-Montes v. Allied Pilots Ass'n*,
   987 F.2d 278 (5th Cir. 1993) ............................................................................ 19

*Funk v. Stryker Corp.*,
   673 F. Supp. 2d 522 (S.D. Tex. 2009), *aff'd* 631 F.3d 777 (5th Cir. 2011) ......................... 22

*Gines v. D.R. Horton*,
   699 F.3d 812 (5th Cir. 2012) .............................................................................. 5

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
   559 U.S. 280 (2010) .......................................................................................... 12

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999) ....................................................................... 20, 22

*Masters v. UHS of Delaware, Inc.*,
   No. 4:06CV1850-DJS, 2008 WL 5600714 (E.D. Mo. Oct. 21, 2008).................. 16

*Melder v. Morris*,
   27 F.3d 1097 (5th Cir. 1994) ............................................................................ 38

*Moran v. Kingdom of Saudi Arabia*,
   27 F.3d 169 (5th Cir. 1994) .............................................................................. 12

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) ........................................................................11

*R2 Inv. LDC v. Phillips*,
  401 F.3d 639 (5th Cir. 2005) ..........................................................................5

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
  635 F.3d 757 (5th Cir. 2011) ..........................................................................5

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
  131 S.Ct. 1885 (2011) ...................................................................................15

*SP Technologies, LLC v. Garmin International, LLC*,
  No. 08 C 3248, 2009 WL 3188066 (N.D. Ill. Sep. 30, 2009)...........................15

*United States ex rel. Barrett v. Johnson Controls, Inc.*,
  No. 3:01-CV-1641-M, 2003 WL 21500400 (N.D. Tex. Apr. 9, 2003)...........11, 39

*United States ex rel. Bennett v. Medtronic, Inc.*,
  747 F. Supp. 2d 745 (S.D. Tex. 2010)...........................................................5, 36

*United States ex rel. Bledsoe v Cmty. Health Sys., Inc.*,
  342 F.3d 634 (6th Cir. 2003) ........................................................................40

*United States ex rel. Colquitt v. Abbott Labs.*,
  864 F. Supp. 2d 499 (N.D. Tex. 2012).......................................................13, 18

*United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*,
  543 F.3d 1211 (10th Cir. 2008)...........................................................24, 32, 34

*United States ex rel. Dekort v. Integrated Coast Guard Sys.*,
  705 F. Supp. 2d 519 (N.D. Tex. 2010)............................................................36

*United States ex rel. Doe v. Staples*,
  __ F. Supp. 2d __, 2013 WL 1192982 (D.D.C. Mar. 22, 2013) ........................18

*United States ex rel. Erskine v. Baker*,
  213 F.3d 638, 2000 WL 554644 (5th Cir. 2000) ...........................................28-29

*United States ex rel. Foster v. Bristol-Meyers Squibb Co.*,
  587 F. Supp. 2d 805 (E.D. Tex. 2008) .....................................................passim

*United States ex rel. Fried v. W. Ind. Sch. Dist.*,
  527 F.3d 439 (5th Cir. 2008) ........................................................................17

*United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*,
  No. 07-CV-247, 2010 WL 1645969 (W.D. Tex. Jan. 21, 2010) ....................28-29

*United States ex rel. Green v. Service Contract Educ. & Training Trust Fund,*
  843 F. Supp. 2d. 20 (D.D.C. 2012) ...............................................................................14

*United States ex rel. Grubbs v. Kanneganti,*
  565 F.3d 180 (5th Cir. 2009) ........................................................................................35

*United States ex rel. Hebert v. Dizney,*
  295 Fed. Appx. 717 (5th Cir. 2008) ..............................................................................19

*United States ex rel. Hobbs v. Medquest Assocs., Inc.,*
  711 F.3d 707 (6th Cir. 2013) ........................................................................................32

*United States ex rel. Hopper v. Anton,*
  91 F.3d 1261 (9th Cir. 1996) ........................................................................................20

*United States ex rel. Jamison v. McKesson Corp.,*
  649 F.3d 322 (5th Cir. 2011) ...................................................................................11, 12

*United States ex rel. Johnson v. Shell Oil Co.,*
  33 F. Supp. 2d 528 (E.D. Tex. 1999) ............................................................................16

*United States ex rel. Karvelas v. Melrose-Wakefield Hospital,*
  360 F.3d 220 (1st Cir. 2004) .........................................................................................20

*United States ex rel. King v. Solvay S.A.,*
  823 F. Supp. 2d 472 (S.D. Tex. 2011), *vacated in part on other grounds on
  reconsideration,* No. H-06-2662, 2012 WL 1067228 (S.D. Tex. Mar. 28, 2012).............28-29

*United States ex rel. Laird v. Lockheed Martin Eng. & Sci. Servs.,*
  336 F.3d 346 (5th Cir. 2003) ("*Laird I*"), *overruled on other grounds by
  Rockwell Int'l Corp. v. United States,* 549 U.S. 457 (2007)...........................................13, 17

*United States ex rel. Laird v. Lockheed Martin Eng. & Sci. Servs.,*
  491 F.3d 254 (5th Cir. 2007) ("*Laird II*"), *certiorari denied by* 552 U.S. 1023....................30

*United States ex rel. Lam v. Tenet Healthcare Corp.,*
  287 Fed. Appx. 396 (5th Cir. 2008) ...........................................................................17-18

*United States ex rel. Lam v. Tenet Healthcare Corp.,*
  481 F. Supp. 2d 689 (W.D. Tex. 2007) ..........................................................................19

*United States ex rel. Longhi v. Lithium Power Techs., Inc.,*
  525 F.3d 439 (6th Cir. 2008) ........................................................................................30

*United States ex rel. Marlar v. MWXT Y-12, L.L.C.,*
  525 F.3d 439 (6th Cir. 2008) ........................................................................................37

*United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*,
   540 F.3d 1180 (10th Cir. 2008)........................................................................14

*United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*,
   No. 12-30656, 2013 WL 1749328 (5th Cir. April 3, 2013) ................................35

*United States ex rel. Patton v. Shaw Servs., L.L.C.*,
   418 Fed. Appx. 366 (5th Cir. Mar. 17, 2011) ........................................ 11, 20, 24

*United States ex rel. Rafizadeh v. Cont'l Common, Inc.*,
   553 F.3d 869 (5th Cir. 2008) ...............................................................34-35, 36

*United States ex rel. Ramadoss v. Caremark, Inc.*,
   586 F. Supp. 2d 668 (W.D. Tex. 2008)..................................................25-26, 33

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*,
   384 F.3d 168 (5th Cir. 2004) ..................................................................14, 16, 18

*United States ex rel. Russell v. Epic Healthcare Mgmt. Group*,
   193 F.3d 304 (5th Cir. 1999) ...............................................................................37

*United States ex rel. Sanders v. N. Am. Bus Indus., Inc.*,
   546 F.3d 288 (4th Cir. 2008) ...............................................................................24

*United States ex rel. Stebner v. Stewart & Stevenson Servs., Inc.*,
   305 F. Supp. 2d 694 (S.D. Tex. 2004), *aff'd*, 144 Fed. Appx. 389 (5th Cir. 2005)..........30, 33

*United States ex rel. Steury v. Cardinal Health*,
   625 F.3d 262 (5th Cir. 2010) .......................................................................passim

*United States ex rel. Stewart v. La. Clinic*,
   No. 99-1767, 2002 WL 1066745 (E.D. La. May 28, 2002) ................................39

*United States ex rel. Swan v. Covenant Care, Inc.*,
   279 F. Supp. 2d 1212 (E.D. Cal. 2002) ...............................................................33

*United States ex rel. Taylor-Vick v. Smith*,
   513 F.3d 228 (5th Cir. 2008) .........................................................................37-38

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
   125 F.3d 899 (5th Cir. 1999) .........................................................................22, 35

*United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*,
   903 F. Supp. 2d 473 (E.D. Tex. 2011) .........................................................21,  35, 37

*United States ex rel. Wall v. Vista Hospice Care, Inc.*,
   778 F. Supp. 2d 709 (N.D. Tex. 2011)..................................................................36

*United States ex rel. Wilkins v. United Health Care Grp., Inc.*,
   659 F.3d 295 (3d Cir. 2011) ............................................................ 33, 34

*United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*,
   336 F.3d 375 (5th Cir. 2003) ............................................. 5, 19, 20, 21

*United States v. Hibbs*,
   568 F.2d 347 (3d Cir. 1977) .................................................... 23-24

*United States v. McClain*,
   No. 1:08-cv-499, 2013 WL 710900 (E.D. Va. Feb. 27, 2013) ....................... 21-22

*United States v. Prabhu*,
   442 F. Supp. 2d 1008 (D. Nev. 2006) ............................................. 28

*United States v. Southland Mgmt. Corp.*,
   326 F.3d 669 (5th Cir. 2003) .............................................. passim

## STATUTES AND RULES

31 U.S.C. § 3729(a)(1), (2)............................................................. 11, 20

31 U.S.C. § 3729(b)(1)................................................................. 38

31 U.S.C. § 3729(b)(4)................................................................. 30, 39

31 U.S.C. § 3730(b) ................................................................. 10, 11

31 U.S.C. § 3730(d)................................................................. 10

31 U.S.C. §3730(e)(4) ............................................................. 3, 11, 12, 16

31 U.S.C. § 3731(b) ................................................................. 28

Fed. R. Civ. P. 9(b) ............................................................. passim

Fed. R. Civ. P. 12(b)(1)............................................................. 9, 11, 12

Fed. R. Civ. P. 12(b)(6)............................................................. passim

## OTHER AUTHORITIES

FHWA Acceptance Letter CC-94
   http://safety.fhwa.dot.gov/roadway_dept/policy_guide/road_hardware/barriers/pdf/cc94.pdf. ...passim

1997 FHWA Policy Memorandum, *Identifying Acceptable Highway Features*
   http://www.fhwa.dot.gov/legsregs/directives/policy/ra.htm. ...............................passim

National Cooperative Highway Research Program Report 350, *Recommended
Procedures for the Safety Performance Evaluation of Highway Feature* ...................... passim

Defendants Trinity Industries, Inc. ("Trinity Industries") and Trinity Highway Products, LLC ("Trinity Highway") (collectively, "Trinity") file this Motion to Dismiss First Amended Complaint and Memorandum in Support ("Motion") and ask the Court to dismiss the Amended False Claims Act Complaint ("Complaint") with prejudice against Relator Joshua Harman ("Harman" or "Relator").

## INTRODUCTION

The Federal Highway Administration ("FHWA")[1] reviewed the allegations made by Harman in this False Claims Act ("FCA") suit and determined that the product challenged—the ET-Plus—*has been and is eligible for reimbursement* under the Federal-Aid Highway Program. In the face of the FHWA's continuous acceptance of the ET-Plus, Harman continues to posture himself as a self-proclaimed whistleblower and pursue claims of fraud by Trinity on the federal government where none exist.

The cornerstone of Harman's FCA Complaint is his claim that Trinity allegedly made "changes" to the ET-Plus, a guardrail end terminal invented by Texas A&M University and manufactured by Trinity Highway, including a five-to-four-inch reduction to the guide channel,[2] and failed to disclose those "changes" to the FHWA.  Harman's *qui tam* action, though, is based on several false premises and undeniable realities that even Harman must concede in his Complaint.  First, the ET-Plus remains today fully eligible for federal reimbursement, despite Harman's crusade against the product.  Second, the FHWA did not require Trinity to submit the information and detailed drawings upon which Harman bases this entire action.  Nor can Harman

---

[1]  The FHWA, a federal agency within the United States Department of Transportation, determines whether highway products are acceptable for use on the National Highway System ("NHS").

[2]  Harman uses the term "feeder channel" in the Complaint, but the correct term is "guide channel."

1

point to such a requirement.  Third, Harman can point to no false statements or claims ever made by Trinity concerning the ET-Plus.  These deficiencies doom Harman's Complaint.

While Harman purports to be a "whistleblower" under the FCA, he is the antithesis of a proper *qui tam* relator.  He is not an employee of Trinity or Texas A&M.  He does not profess to have any inside information.  Harman admits in his Complaint that he possesses no personal knowledge concerning any fraud, false statement, or false claims submitted by Trinity concerning the ET-Plus.  Instead, Harman is an opportunistic litigant hoping for a windfall by filing this *qui tam* suit based entirely on publicly available information, a fact he has admitted to this Court in previous filings.

In fact, Harman copied and sold his own version of the ET-Plus using the same four-inch component that he now complains is "killing" people.  It is Trinity's belief that Harman's true motivation is not the public good.  Rather, Harman seeks to retaliate against Trinity for pursuing a patent infringement lawsuit against his companies in the Eastern District of Virginia.

The FCA does not provide a weapon for private litigants like Harman to wield against companies like Trinity simply because Harman disagrees with the decisions of the FHWA.  Nor can the FCA be used by Harman to impose his own misguided and incorrect interpretations of federal policy.  Rather, the FCA redresses only fraud in connection with claims for payment to the United States government.  To survive a motion to dismiss an FCA claim, the relator must, at a minimum, (1) allege a false claim for payment to the United States, (2) within the statute of limitations, and (3) demonstrate that he is the original source of information that has been publicly disclosed.  In addition to its other deficiencies, Harman's Complaint does not satisfy any of these requirements, and this case should be dismissed.

## STATEMENT OF ISSUES

1.   Whether the Court should dismiss the Complaint under Rule 12(b)(1) because Harman's allegations are admittedly based upon publicly disclosed information and because Harman is not an original source of the information, thus depriving this Court of jurisdiction over the FCA claim under the "public disclosure" bar in 31 U.S.C. §3730(e)(4) (2008)?

2.   Alternatively, whether the Court should dismiss the Complaint with prejudice as to Harman:

      a.   Under Rule 12(b)(6) because Harman has not stated a claim under the False Claims Act, or

      b.   Under Rule 12(b)(6) for failure to state a claim based on the applicable statute of limitations, or

      c.   Under Rule 9(b) for failure to plead fraud with particularity because Harman has failed to plead the who, what, when, where, and how of Trinity's alleged FCA violations?

## STATEMENT OF FACTS

### I.   The Parties and the ET-Plus.

Defendant Trinity Highway is the manufacturer of a product called the ET-Plus, an "end terminal" that is placed on the ends of certain roadside guardrails and designed to "absorb and dissipate the energy" of a vehicle upon impact.  Amended Complaint ("Cplt.") ¶ 10, Dkt. 22.


The ET-Plus as Installed

The ET-Plus is patented and designed by Texas A&M University  and is licensed to Defendant Trinity Industries and its subsidiaries, including Trinity Highway.  *Id.* ¶¶ 10, 11. Because Trinity only possesses a license to make and sell the commercial embodiment of what is the intellectual property of Texas A&M, it cannot make design changes to the ET-Plus.

Relator Joshua Harman initiated this FCA lawsuit against Trinity Industries on March 6, 2012, six months after Trinity Industries and Texas A&M sued his companies for infringing the patents covering the ET-Plus.  *See* Orig. Cplt., Dkt. 1.  On May 16, 2013—after the United States

3

declined to intervene in the FCA lawsuit—Harman filed his Amended Complaint, in which he added Trinity Highway as a defendant and made new allegations concerning alleged fabrication changes to the ET-Plus.  Cplt. ¶¶ 6, 15, 23.

## II.   Harman alleges that Trinity "secretly redesigned" the ET-Plus without disclosing those changes to the FHWA in 2005.

The heart of Harman's FCA Complaint is his allegation that between 2002 and 2005, Trinity "secretly redesigned" the ET-Plus and did not disclose those changes to the FHWA in accordance with FHWA "requirement[s] for a new or modified unit." *Id*. ¶¶ 14-16, 21.  The primary change Harman alleges is a reduction of the width of the ET-Plus guide channel from five inches to four inches. *Id*. ¶¶ 15, 23.  In addition to the five-to-four-inch reduction, Harman alleges, for the first time in his Amended Complaint, that Trinity also made certain fabrication changes through its manufacturing process to (1) the exterior "feeder chute" assembly height; (2) the interior "feeder chute" assembly height; (3) the "feeder chute" assembly length, and (4) the exit gate. *Id*.

Harman complains that Trinity did not expressly notify the FHWA about these alleged modifications to the ET-Plus.  He alleges that Trinity omitted "scaled drawings" of the ET-Plus in a submission it made to the FHWA in July 2005, and that Trinity "has only provided to the FHWA one drawing" of a unit showing a four-inch guide channel, but that the "drawing lacks the detail necessary for it to be effectively used and is not scalable." *Id*. ¶¶ 16, 21.  Harman admits, however, that: (1) Trinity provided the FHWA documentation showing the five-to-four-inch reduction and met with the FHWA before Harman filed the Complaint; (2) Trinity's alleged five-to-four-inch reduction was incorporated into a version of the ET-Plus that was crash tested on May 27, 2005; and (3) the FHWA subsequently reaffirmed its acceptance of the ET-Plus, fully aware of Harman's complaints. *Id*. ¶¶ 19-20, 32-33.  Harman concedes that even after he

4

brought the "existence and sale of the unapproved version" of the ET-Plus "to the FHWA's attention … in January 2012," the FHWA "continued to approve the use of the ET-Plus." *Id.* ¶¶ 31-32.

Finally, Harman does not allege in his Complaint that Trinity made or caused to be made a false claim for payment to the federal government. Instead, he alleges solely on "information and belief" that Trinity "provided . . . false certification[s]" to customers who purchased an ET-Plus by allegedly stating that the product was the same as that crash tested. *Id.* ¶ 38.

## III. The FHWA finds the ET-Plus crashworthy and acceptable for use on the National Highway System.

The FHWA is an agency within the United States Department of Transportation vested with the authority and discretion to oversee eligibility for products to receive federal highway funds. *Id.* ¶ 25. For highway products developed and crash tested before the end of 2011, the FHWA determined acceptance for use on the national highway system following the developer's submission of crash testing reports and supporting documentation. *See* 1997 FHWA Policy Memorandum, *Identifying Acceptable Highway Features* ("1997 Policy Memo").[3]

In the 1997 Policy Memo, the FHWA set forth its position that beginning October 1, 1998, all new or replacement safety products on the National Highway System "are to have been

---

[3]  The Court can consider the 1997 Policy Memo with respect to all grounds for dismissal in this Motion because it is expressly referenced and incorporated into Harman's Complaint (*see* Cplt. ¶¶ 26 & n.2, 28) and is also publicly available on the FHWA's website at http://www.fhwa.dot.gov/legsregs/directives/policy/ra.htm. In deciding a motion to dismiss, a court "may consider documents attached to or incorporated in the complaint." *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). A court also may consider documents that are merely referred to in a complaint, if they are central to the allegations in the complaint, as well as documents that are matters of public record. *Gines v. D.R. Horton*, 699 F.3d 812, 820 (5th Cir. 2012); *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995). Courts also may consider documents of which they take judicial notice, including documents available on agency websites. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011); *R2 Inv. LDC v. Phillips*, 401 F.3d 639, 640 n.2 (5th Cir. 2005); *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 756 .9 (S.D. Tex. 2010).

tested and evaluated and found acceptable in accordance with the guidelines in the NCHRP Report 350." 1997 Policy Memo; National Cooperative Highway Research Program Report 350, *Recommended Procedures for the Safety Performance Evaluation of Highway Features* ("NCHRP 350").[4]  NCHRP 350, which the Transportation Research Board promulgated in 1993, provides a uniform set of guidelines for determining the crashworthiness of highway products. *See id.*  NCHRP 350 does not impose rigid requirements; instead it contains only "*recommended* procedures for evaluating the safety performance of various highway safety features."  NCHRP 350 at "Foreword" (emphasis added).  NCHRP 350 *does not require* designers like TTI to submit "scaled drawings" in their submission for acceptance.  Cplt. ¶ 16.  Instead, NCHRP 350 provides that "the test article should be fully described with engineering drawings and material specifications."  NCHRP 350 § 6.1.

Once the FHWA accepts a product, NCHRP 350 expressly acknowledges that changes can be—and, indeed, are commonly made—to a product after testing:

> It is *not uncommon for a designer/tester to make design changes* to a feature during the course of conducting the recommended test series or *after successful completion of the test series*.  Changes are often made to improve performance or to reduce cost of the design or both.  Questions then invariably arise as to the need to repeat any or all of the recommended tests.  Good engineering judgment must be used in such instances.  As a general rule, a test should be repeated if there is a reasonable uncertainty regarding the effect the change will have on the test.

*Id*. at § 3.1 (emphasis added).  These changes do not automatically require a new series of crash tests.  Instead, NCHRP 350 recommends that "[g]ood engineering judgment" be exercised by the

---

[4] The Court can consider NCHRP 350 with respect to all grounds for dismissal in this Motion because it is expressly referenced and incorporated into Harman's Complaint (*see* Cplt. ¶¶ 25 n.3, 27, 29) and is also publicly available at http://onlinepubs.trb.org/Onlinepubs/nchrp/nchrp_rpt_350-a.pdf, which is linked to through the FHWA's website at http://safety.fhwa.dot.gov/roadway_dept/policy_guide/road_hardware/.  *See supra*, n.3.

designer/tester. *Id.*  If there is no "reasonable uncertainty" regarding the proposed changes, then the test series need not be repeated. *Id.*

Pursuant to the 1997 Policy Memo, once a product like the ET-Plus is accepted by the FHWA, the FHWA sends a letter to the developer indicating its acceptability for use on the National Highway System.   1997 Policy Memo.   The FHWA then forwards copies of the acceptance letters to state and local highway agencies, "[a]s a service to" those agencies. *Id.*

The FHWA has consistently determined that the ET-Plus is crashworthy according to NCHRP 350 guidelines. *See* Cplt. ¶ 1.  The Texas A&M Transportation Institute ("TTI") first tested the ET-Plus according to the NCHRP 350 guidelines with results reported in January 2000, and the results were, as Harman admits, "very successful." *Id.* ¶ 12.  The FHWA issued an acceptance letter indicating that the ET-Plus met the NCHRP 350 guidelines, qualifying the ET-Plus for federal reimbursement. *Id.*

In 2005, after Texas A&M advised Trinity that its design engineers sought to reduce the lateral and vertical size of the guide channels and inquired if it could be manufactured as suggested, Trinity manufactured the ET-Plus with a reduced guide channel width (from five inches to four inches). *See* Cplt. ¶¶ 19, 31.  Three additional fabrication revisions necessarily flowed from the five-to-four reduction:  (1) the exterior guide channel assembly height; (2) the interior guide channel assembly height; and (3) the guide channel assembly length. *Id.* ¶¶ 15, 19, 31, 35.  An ET-Plus extruder head with 4-inch guide channels was used in a May 27, 2005 crash test of the entire ET-Plus system at TTI. *Id.* ¶¶ 31-33.  Trinity submitted these performance results pursuant to NCHRP 350, in a July 2005 crash test report assembled and produced by TTI, to the FHWA with a Request for Acceptance of the ET-Plus Terminal for 31 Inch High Guardrail. *Id.* ¶ 21.  The FHWA responded with a Letter of Acceptance CC-94 dated September

2, 2005.  ("2005 Acceptance Letter") (Apps. 5, 6); Cplt. ¶¶ 21, 32.  Trinity began manufacturing for sale the ET-Plus with the 4-inch guide channel after the September 2, 2005 acceptance by the federal government.

The FHWA again found that the ET-Plus system was acceptable for use on the National Highway System and qualified for federal reimbursement on March 15, 2010 and, as described below, in October 2012.  Cplt. ¶¶ 30, 32.

## IV.    After receiving notice of Harman's allegations, the FHWA reaffirmed its acceptance of the ET-Plus and the United States Government declined to intervene.

The FHWA is entrusted with the authority to address claims of non-compliance with its regulations and rules.  The FHWA possesses the discretion to "modify or revoke its acceptance" of a product if it determines that "the device being marketed is *significantly different* from the version that was crash tested."  1997 Policy Memo (emphasis added).  The FHWA also has the discretion to "withdraw[] [its] acceptance" if it determines there has been "[a]ny deliberate misrepresentation or withholding of the conditions of FHWA's acceptance of a feature by the supplier of a feature."  *Id*.  Harman alleges that he brought "the existence and sale of the unapproved version" of the ET-Plus to the attention of the FHWA in January 2012.  Cplt. ¶ 31.  Following that meeting—and after considering Harman's allegations—the FHWA nonetheless reaffirmed that the ET-Plus with the 4-inch guide channel is eligible for federal reimbursement under letter CC-94 and "has continued to approve the use of the ET-Plus on the National Highway System."  *Id.* ¶ 32.

At the same time that the FHWA was reviewing (and rejecting) Harman's concerns, the United States Department of Justice also investigated his allegations pursuant to the FCA.  After Harman's Original Complaint was under seal for nearly one year, on January 18, 2013, the DOJ

declined to intervene in this action.   *See* Government's Notice of Election to Decline Intervention, Dkt. 7 (Jan. 18, 2013); Order, Dkt. 8 (Jan. 23, 2013).

## SUMMARY OF THE ARGUMENT

The Court should dismiss Harman's Complaint on multiple grounds, each of which independently supports dismissal.   First, the Court lacks subject matter jurisdiction over this action and the Complaint should be dismissed pursuant to Rule 12(b)(1) based on the FCA public disclosure bar.   Under the public disclosure bar, a *qui tam* relator cannot maintain an FCA action based on publicly disclosed information, unless he qualifies as an original source. Harman admitted to this Court that he learned of all of his allegations—not through inside knowledge he possesses—but from mining public sources of information.   Therefore, he is not an original source and the Complaint should be dismissed for lack of subject matter jurisdiction.

Separate from this core jurisdictional defect, the Complaint fails to state a claim under Rule 12(b)(6) with respect to multiple elements of the FCA cause of action.   *First*, Harman cannot state a claim because he does not identify a single false claim submitted by Trinity for payment to the federal government and he does not allege anything (other than vague assertions on "information and belief") regarding how or why any claim was false.   *Second*, Harman fails to allege an FCA claim because he does not plead any causal link between any alleged false statements to Trinity's private customers and any claim for payment that may have been submitted by others to the federal government.   *Third*, Harman cannot state an FCA claim based on Trinity's 2005 submission to the FHWA because Trinity was not required to provide the so-called omitted drawings.   *Fourth*, the FCA statute of limitations bars all of Harman's purported claims because the alleged conduct occurred outside the FCA six-year statute of limitations. *Fifth*, Harman does not and cannot allege that any of his allegations concerning changes to the ET-Plus would have been material to the FHWA or any claim for payment, as the government

continues to accept the ET-Plus as eligible for reimbursement in spite of Harman's misguided complaints.  *Sixth*, Harman's attempt to circumvent the FHWA's decision-making authority through his FCA Complaint should be rejected because it is an impermissible use of the False Claims Act.

In addition, the Complaint does not come close to meeting the heightened pleading requirements of Rule 9(b) because it falls far short of alleging with particularity (i) the submission of a false claim, (ii) knowledge, or (iii) materiality—all critical elements of an FCA claim.  Indeed, Harman does not allege the existence of even *a single* claim for payment that he contends was false, much less plead the required "who, what, when, where and how" particulars of such a claim.  Nor does he allege with particularity any individualized allegations specific to either of the two separate corporate defendants.

For all—or any—of these reasons, Trinity respectfully requests that the Court dismiss this action.

## ARGUMENT

### I.      Overview of the False Claims Act.

The False Claims Act, 31 U.S.C. § 3729, *et seq.*, prohibits the submission of false or fraudulent claims for payment to the United States government.  *United States ex rel. Foster v. Bristol-Meyers Squibb Co.*, 587 F. Supp. 2d 805, 812 (E.D. Tex. 2008).  To enforce this prohibition, the FCA permits a private person—a *qui tam* "relator"—to bring and prosecute actions on behalf of and in the name of the United States government.  31 U.S.C. § 3730(b).  To incentivize such suits, the FCA allows a private relator to collect a portion (up to 30 percent) of any recovery.  *Id.* § 3730(d).  At the same time, Congress seeks to restrict this award to those individuals who possess and report truly inside information of fraud by way of the "public disclosure bar," which precludes suits by opportunistic relators alleging a fraud whose essential

10

elements have already been publicly revealed.   *See id.* § 3730(e)(4); *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011).

The heart of an FCA violation is a knowing false statement or claim for payment to the government.  Specifically, a person can violate the FCA if he:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; [or]
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

31 U.S.C. § 3729(a)(1), (2).[5]  To state a claim under the FCA, a relator must sufficiently allege that a defendant: (1) made a false statement or claim; (2) with the requisite scienter; (3) that was material to the government's payment decision; and (4) that caused the government to pay out money or to forfeit moneys due (*i.e.*, that involved a claim).  *United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 Fed. Appx. 366, 369 (5th Cir. Mar. 17, 2011).

## II.     The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1) Because Harman's Allegations are Based on Public Disclosures and Harman is not an Original Source.

Any doubts as to subject matter jurisdiction must be resolved at the outset of an action, even before ruling on other grounds for dismissal.[6]  *United States ex rel. Barrett v. Johnson Controls, Inc.*, No. 3:01-CV-1641-M, 2003 WL 21500400, at *3 (N.D. Tex. Apr. 9, 2003) (citing

---

[5] The foregoing cite is to the pre-2009 version of the FCA, which is the version Harman asserts in his Complaint.  *See* Cplt. ¶¶ 41-43.  All citations to the elements of an FCA claim herein will be to this version of the statute.

[6] Under Federal Rule of Civil Procedure 12(b)(1), the defendant can make a "factual attack" on the court's jurisdiction by submitting evidence regarding jurisdictional facts.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  When the defendant attaches evidence as Trinity has here, the court does not presume the truth of relator's allegations, and the relator must submit evidence to sustain his burden to prove by a preponderance of the evidence that the court has subject matter jurisdiction.  *Id.*  Accordingly, in addition to the Complaint and other documents that may be properly considered on a motion to dismiss (*see supra* n.3), Trinity also relies on the documents attached to its Appendix only to support its Rule 12(b)(1) ground for dismissal.

*Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)).  Dismissal under Rule 12(b)(1) is appropriate here because the Court lacks subject matter jurisdiction over Harman's Complaint pursuant to the public disclosure bar. *See* 31 U.S.C. § 3730(e)(4)(A) (2008).[7]  Under the public disclosure bar, federal courts do not have jurisdiction over a *qui tam* action if:  (1) there has been a "public disclosure of allegations or transactions" in one of several specified forums, including a civil hearing, an administrative report, or the news media; (2) the *qui tam* action is "based upon" such publicly-disclosed allegations or transactions; and (3) the relator cannot show that he is the "original source" of the information.  *Jamison,* 649 F.3d at 327.

There is no reasonable dispute that the information underlying Harman's allegations was publicly disclosed prior to the filing of this lawsuit, or that Harman's FCA claim is based upon such publicly-disclosed information.  Moreover, Harman cannot meet his burden of showing that he is the "original source" of such publicly-disclosed information.  While the FCA *qui tam* provisions exist to encourage whistle-blowing insiders to come forward with genuinely valuable first-hand information about fraud, the public disclosure bar exists to stifle opportunistic or parasitic litigants who have no significant information of their own to contribute.  *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 293-94 (2010).  Harman is the quintessential parasitic litigant, and his Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

### A.    Harman admits his Complaint is based upon public disclosures.

Harman's allegations were publicly disclosed before Harman filed his lawsuit on March 6, 2012, and his FCA claim is "based upon" those "public disclosure[s]."  Indeed, in his

---

[7] The foregoing cite is to the pre-2010 version of the FCA's public disclosure bar, which was amended as part of the Patient Protection and Affordable Care Act.  This is the version Harman relies on in his Complaint.  Cplt. ¶ 9.  All citations to the public disclosure bar herein will be to this version of the statute.

Complaint, Harman expressly acknowledges the "*publicly disclosed information* that the allegations herein are *based upon*." Cplt. ¶ 9 (emphasis added).  While Harman's admission is sufficient to demonstrate that Harman's claims are precluded by the public disclosure bar, evidence resoundingly supports such a finding as well.

For the public disclosure bar to be triggered, not every allegation in a complaint needs to be disclosed, but rather only "the critical elements" of the alleged fraud.  *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 519 (N.D. Tex. 2012).  As discussed below, the crux of Harman's FCA claim is his allegations that Trinity made certain changes to the ET-Plus and failed to disclose those changes to the FHWA in its July 2005 submission.  Cplt. ¶¶ 14-24.  Those allegations are based entirely on information that was disclosed prior to Harman's filing of this lawsuit on March 6, 2012.

First, Harman himself disclosed the allegations regarding Trinity's alleged changes to the ET-Plus.  *See United States ex rel. Laird v. Lockheed Martin Eng. & Sci. Servs.*, 336 F.3d 346, 352 n.2 (5th Cir. 2003) ("*Laird I*") (holding that a relator can be the source of his own public disclosures "because the public disclosure bar is an express statutory bar to the subject matter jurisdiction of the courts to review a case based on information that has been publicly disclosed), *overruled on other grounds by Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 472-73 (2007).  Harman's public disclosures include:

| Date | Disclosure |
|---|---|
| Feb. 2012 | Public presentation at the 2012 American Traffic Safety Services Association's annual convention.  Cplt. ¶ 37 (conceding that Harman "provided a summary presentation of the facts herein to the state highway officials from" seven different states); Orig. Cplt. ¶ 14 (confirming that he gave the Presentation "three weeks" before the filing of his lawsuit). |
| Jan. 2012 | Harman's website: www.failingheads.com.  Harman conceded that as of the filing of his Original Complaint, his website "contain[ed] most of the |

13

| | |
|---|---|
| | information found in this complaint." Orig. Cplt. ¶ 15.[8] |
| Feb. 29, 2012 | Harman's PowerPoint Presentation ("Presentation"), which he attached as Exhibit A to both his Original and Amended Complaints, discloses every single change alleged in his Complaint. *See* Sealed Presentation at 15, 17, 31, 39, 43, 44, 47, 48, 51, 54, 58, 60, Cplt. Exh. A.[9]  Among other public disclosures of the Presentation, Harman filed it as an attachment to a motion in the Defamation Lawsuit on February 29, 2012. *See* Defamation Lawsuit, Motion for 30 Day Extension, Dkt. 4 (Feb. 29, 2012) (App. 3). |
| Nov. 4, 2011 Dec. 30, 2011 Feb. 24, 2012 | In original and amended answers in the Patent Lawsuit, Harman alleged that after years of making and selling a version of the ET-Plus with a 5-inch feeder chute, Trinity "started making and selling a third generation of ET PLUS guardrail heads with a 4 inch feeder chute . . . and an extruder throat with an exit gap having a manufacturing variance between 1 inch to 1½ inches." Patent Lawsuit, Dkt. 25 at 28-30; Dkt. 46 at 41-44; Dkt. 94 at 44-45 (App. 4). |

These disclosures in public presentations, websites, and public pleadings easily satisfy the first prong of the public disclosure bar with respect to Harman's allegations of changes to the ET-Plus. *See, e.g., United States ex rel. Green v. Service Contract Educ. & Training Trust Fund*, 843 F. Supp. 2d. 20, 32-33 (D.D.C. 2012) (information about defendant's fraudulent scheme was publicly disclosed on its website); *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys*, 384 F.3d 168, 174 (5th Cir. 2004) (pleadings filed in civil litigation are disclosures in a "civil hearing"); *United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 540 F.3d 1180, 1185 (10th Cir. 2008) (a public disclosure occurs when the information is

---

[8] Historical screen shots taken from Harman's website confirm his admission. *See, e.g.,* Jan. 27, 2012 Screen Shot (App. 1) (inviting the public to "[t]ake a look at this [ET-Plus] test video from 1999 of the original test that was submitted to the FHWA for approval" and stating that "[y]ou can easily notice the … 5 inch feed channel . . . .  Why it was changed we might never know"); Jan. 30, 2012 Screen Shot (App. 2) ("The current (fourth) generation [ET-Plus], which was introduced in or around 2004 ... has a 4" feed channel.").

[9] Trinity's reference to the sealed Presentation does not waive its continuing objection to the contents or the grounds for its classification as an attorneys-eyes only document pursuant to this Court's previous orders. *See* Dkt. 14 (Feb. 27, 2013); Defamation Case, Dkt. 11 (Mar. 1, 2012).

"placed in the public domain" and is "at least theoretically available" to members of the public with no obligation to keep it confidential).

Second, Harman's allegation that Trinity failed to disclose its alleged changes to the ET-Plus to the FHWA was also publicly disclosed numerous times. Harman's specific allegation is that, in July 2005, Trinity submitted documents to the FHWA "specifying eight (8) changes that were made to the ET-Plus system," but that "not one change to the internal or external dimensions of the extruder head was revealed in that submission." Cplt. ¶ 21. Harman, however, obtained a copy of Trinity's 2005 submission on or before March 6, 2012 through a FOIA request when he served as a litigation consultant and directed a Florida law firm to submit a FOIA request to the Department of Transportation. *See* Trinity's 2005 Submission to the FHWA, produced in response to a FOIA Request (App. 5). As the Supreme Court has squarely held, a response to a FOIA request is an "administrative report" and thus a public disclosure under § 3730(e)(A)(4). *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S.Ct. 1885, 1893 (2011). The FHWA also confirmed the contents of Trinity's July 2005 submission in a September 2, 2005 response letter accepting the ET-Plus for use on the National Highway System. Harman received a copy of the letter in response to the FOIA request. *See* FHWA's 9/2/05 Acceptance Letter CC-94, produced to Harman in response to a FOIA Request (App. 6). Additionally, the FHWA posted this letter on its public website when it issued, per its standard policy.[10] *See* Internet Archive of FHWA Website Posting (App. 7). Accordingly, the central

---

[10] FHWA Acceptance Letter CC-94 is currently available at: http://safety.fhwa.dot.gov/roadway_dept/policy_guide/road_hardware/barriers/pdf/cc94.pdf. Further, a May 20, 2009 screen shot of the FHWA web page confirms that 2005 Acceptance Letter CC-94 was posted at least as of that date. *See* Internet Archive of FHWA Website and Authenticating Affidavit (App. 7). *See, e.g., SP Technologies, LLC v. Garmin Int'l, LLC*, No. 08 C 3248, 2009 WL 3188066, at *3 (N.D. Ill. Sep. 30, 2009) (approving of the use of Internet

factual allegations underlying Harman's Complaint were publicly disclosed multiple times, in multiple forums.

Moreover, there is simply no dispute that Harman's FCA claim is "based upon" that publicly disclosed information.   *See* Cplt. ¶ 9 (acknowledging the "publicly disclosed information that the allegations herein are based upon").   The test for whether a claim is "based upon" public disclosures is not rigorous and requires merely that the relator's claim is "supported by" the information in the public domain.   *See United States ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528, 541 (E.D. Tex. 1999) (recognizing the "supported by" standard as proper in the Fifth Circuit and holding that the public disclosure bar "precludes suits based in any part on publicly disclosed information"); *Fed. Recovery Servs., Inc. v. Crescent City E.M.S.*, 72 F.3d 447, 451 (5th Cir. 1995) ("An FCA qui tam action even partly based upon publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transaction.").

**B.      Harman is not an original source.**

Despite his unsupported allegation in his Complaint to the contrary, Harman admits he is not an "original source" of the information underlying his Complaint.   According to Harman, all of the factual allegations regarding Trinity's alleged changes to the ET-Plus, were "meticulously compiled… *from public sources.*"   Defamation Lawsuit, Dkt. 64 at 2 (Apr. 29, 2013) (App. 8) (emphasis in original).   This admission is fatal to Harman's original source argument.

The FCA defines "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based."   31 U.S.C. § 3730(e)(4)(B). Harman has the burden to prove that he has direct and independent knowledge of every essential element of his fraud claim.   *See Reagan*, 384 F.3d at 176-77.   To be "direct," Harman must show

Archive web pages to authenticate historical web pages); *Masters v. UHS of Delaware, Inc.*, No. 4:06CV1850-DJS, 2008 WL 5600714, at *2 (E.D. Mo. Oct. 21, 2008) (same).

that he has "firsthand knowledge" of the fraud—knowledge that is derived from the source without interruption or gained by Harman's own efforts rather than learned second-hand through the efforts of others. *United States ex rel. Fried v. W. Ind. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008); *Laird I*, 336 F.3d at 355.  To be "independent," Harman's information cannot depend or rely on public disclosures. *Fried*, 527 F.3d at 442.  Harman cannot satisfy these requirements.

First, Harman cannot prove that he is an original source of his allegations regarding Trinity's alleged changes to the ET-Plus.  As shown above, Harman admitted that he derived all of the information in his Presentation, which contains all of his "change" allegations, from public sources.  Defamation Lawsuit, Dkt. 64 at 2 (Apr. 29, 2013) (App. 8) (emphasis in original).  This admission alone is dispositive of any claim Harman may have that he is an "original source" of his allegations regarding Trinity's changes.  *See Fried*, 527 F.3d at 442 (finding that "independent" knowledge does not rely on public disclosures).

Further, even if Harman did not learn of the alleged changes through "public" sources, he learned of them second-hand through mining discovery and deposition testimony in another lawsuit.  Therefore, his knowledge cannot be "direct."  In the Complaint, Harman states that his knowledge of the timing and substance of Trinity's alleged modifications was "[b]ased on the information and testimony that was made available in certain patent litigation filed in the Eastern District of Virginia as well as Harman's investigation."  Cplt. ¶ 18.  And he further conceded in the Defamation Lawsuit that his "extensive discovery efforts, through his companies, in the EDVA action unearthed further evidence, which will buttress Harman's federal *qui tam* claims currently pending before this Court."  Defamation Lawsuit, Dkt. 70 at 11 (May 16, 2013) (App. 9).  Thus, Harman's knowledge is classically "derivative of the information of others" and is

therefore neither independent nor direct.  *United States ex rel. Lam v. Tenet Healthcare Corp.*, 287 Fed. Appx. 396, 400-02 (5th Cir. 2008).

Second, Harman cannot prove that he is an original source with respect to his claim that Trinity failed to disclose its alleged product changes to the FHWA in its July 2005 submission. As shown above, Harman obtained a copy of Trinity's July 2005 submission through a public FOIA request.  And the FHWA's September 2, 2005 acceptance letter, which listed the system modifications Trinity identified in its submission, has long been publicly available through the FHWA's website.  As an outsider, Harman's knowledge of Trinity's alleged non-disclosure to FHWA is necessarily based entirely on reviewing and interpreting the relevant approval documents, not on "first-hand, insider knowledge."  *Id.* at 401-02.   Therefore, Harman cannot show that he has the kind of direct and independent knowledge the FCA requires.  *See id.* at 400; *Reagan*, 384 F.3d at 178-79; *see also Colquitt*, 864 F. Supp. 2d at 525; *United States ex rel. Doe v. Staples*, __ F. Supp. 2d __, 2013 WL 1192982, at *4-5 (D.D.C. Mar. 22, 2013).

Because Harman admits that his Complaint is based on public disclosures and because he is not an original source, the Court should dismiss the Complaint for lack of subject matter jurisdiction based on the FCA public disclosure bar.

## III.  Harman's Claims Should Be Dismissed Under Rule 12(b)(6) Because He Has Not Stated a Claim for Violation of the FCA.

Even if Harman could overcome the core jurisdictional defect in his Complaint—which he cannot—the Complaint remains fatally deficient under Federal Rule of Civil Procedure 12(b)(6) and must be dismissed.  Harman fails to state a claim in a number of respects.  Harman does not assert that Trinity made or caused to be made a claim for payment to the Government, which is the *sine qua non* of an FCA claim, and he does not allege a causal link between any alleged false certification and a government payment.  Moreover, Harman's allegations relating

18

to Trinity's 2005 submission to the FHWA are legally invalid because they incorrectly assume that Trinity was obligated to notify the FHWA of the alleged "changes" or to submit "scalable" drawings.   Harman's purported FCA claims are also barred by the applicable statute of limitations.   Additionally, Harman's Complaint does not show how any alleged statement could have affected the Government's payment decision, given the FHWA's continued acceptance of the ET-Plus.   In the end, Harman's attempts to use the FCA to supplant the FHWA's authority must fail, and Harman's Complaint should be dismissed with prejudice.[11]

### A.    The Rule 12(b)(6) pleading standard.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."   *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).   Harman's Complaint fails this most basic test because

---

[11] Courts routinely dismiss a complaint with prejudice when the plaintiff has "failed to cure deficiencies by amendments previously allowed and when amendment would be futile." *E.g.*, *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (affirming dismissal of FCA complaint without leave to amend); *United States ex rel. Hebert v. Dizney*, 295 Fed. Appx. 717, 725 (5th Cir. 2008) (same); *United States ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 689, 699 (W.D. Tex. 2007) (dismissing FCA complaint without leave to amend).   Well over a year after filing his Original Complaint, and nearly four months after the government declined to intervene in this case, Harman substantively amended his complaint.   This Amended Complaint is Harman's best effort to muster all his allegations and state a claim against Trinity.   But despite repleading, he remains unable to state a plausible cause of action under the FCA.   In these circumstances, Harman should not be afforded leave to amend, and dismissal with prejudice is appropriate.

he does not allege—beyond making purely conclusory statements and reciting legal conclusions—the necessary facts to state a claim under 31 U.S.C. § 3729(a)(1) and (2).

**B. Harman has not alleged that Trinity made a false statement or claim for payment to the United States government.**

It is well established that the *sine qua non* of an FCA claim is the submission of an actual false claim for payment to the United States government. *United States ex rel. Foster v. Bristol-Meyers Squibb Co.*, 587 F. Supp. 2d 805, 813 (E.D. Tex. 2008) (citing *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220, 227-28 (1st Cir. 2004)). As the Fifth Circuit has explained, the FCA "statute attaches liability, not to the underlying fraudulent activity ... but to the 'claim for payment.'" *United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 Fed. Appx. 366, 369 (5th Cir. Mar. 17, 2011) (citation omitted); *see also United States ex rel. Steury v. Cardinal Health*, 625 F.3d 262, 267 (5th Cir. 2010).

The FCA thus does not create liability merely for an alleged "disregard of Government regulations," unless "as a result of such acts, [the defendant] *knowingly* asks the Government to pay amounts it does not owe." *Willard*, 336 F.3d at 381 (emphasis added); *see also United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) ("Violations of laws, rules, or regulations alone do not create a cause of action under the [FCA]."). It is therefore not enough to allege merely that a defendant violated a contract provision, regulation, or a statute. *Steury*, 625 F.3d at 268; *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999).

**1. Harman fails to identify any claim for payment to the government.**

As a threshold matter, Harman's Complaint does not allege a single invoice or claim that Trinity purportedly made—or caused to be made—for payment to the United States government. Other than in a formulaic recitation of the elements of an FCA cause of action (*see* Cplt. ¶ 41),

nowhere in the Complaint does Harman even assert that Trinity made or caused to be made a claim for payment.  Merely alleging that Trinity changed the ET-Plus and failed to comply with the FHWA's guidance and rules in the acceptance process—which is the most Harman has alleged—does not show a false claim for payment was made to the government.  On this basis alone, Harman's FCA claim should be dismissed.  *See, e.g., Willard*, 336 F.3d at 381 (no FCA liability for mere alleged "disregard of Government regulations"); *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 675 (5th Cir. 2003) (FCA claim fails "unless the [defendants] submitted claims for money to which they were not entitled").

Moreover, the Complaint alleges no facts upon which the Court could even infer a claim for payment calling on the federal fisc.  At best, Harman vaguely alleges, on information and belief, that Trinity made unidentified certifications that its product conformed to the unit approved by the FHWA to "contractor-purchasers that would forward those certifications as part of their invoices in order to be *entitled* to payment from state or federal authorities."  Cplt. ¶ 38 (emphasis added).  He goes on to assert that "[i]n the case of purchasers paid in the first instance by state authorities, the states would forward the certifications or provide their own certifications that the roadside hardware was in compliance with or approved by the FHWA for reimbursement by the U.S. government."  *Id.*

Importantly, Harman fails to allege any connection between these unidentified certifications by Trinity to private customers and any misrepresentations in any actual invoices or claims submitted by others for payment to the federal government.  *See United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 903 F. Supp. 2d 473, 486 (E.D. Tex. 2011) (dismissing FCA claim where "complaint [did] not allege facts that tie[d] KBR's acceptance of kickbacks to its submitted claims for payment"); *United States v. McClain*, No. 1:08-cv-499, 2013 WL

710900, at *5 (E.D. Va. Feb. 27, 2013) (finding that the "only references to invoices and payments are conclusory statements at the beginning and end of the Complaint, where Relator recites the elements of the FCA," and holding that such "threadbare recitals" were insufficient to allege the submission of a claim for payment under Rule 12(b)(6)).

**2.    Harman fails to allege a false statement or document that was used to get a claim paid.**

In addition, Harman does not allege that Trinity made a material misrepresentation to the government or even to its customers about the ET-Plus in order to get a claim paid. *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1999); *see also Southland Mgmt. Corp.*, 326 F.3d at 674-75; *Harrison*, 176 F.3d at 785.   To try to address this fundamental problem, Harman makes conclusory allegations of false certifications to customers purely on information and belief and points to statements made by the FHWA, as opposed to any statements allegedly made by Trinity.  Cplt. ¶¶ 30, 38.

Specifically, Harman alleges "*[o]n information and belief*" that "every time Trinity sold the ET-Plus after the secret 2005 modifications, it *necessarily* provided a false certification that the ET-Plus conformed to the unit that had been approved by the FHWA."  *Id.* ¶ 38 (emphases added).  This bald, "information and belief" allegation, without more, cannot support an FCA claim under Rule 12(b)(6) standards, let alone under the heightened Rule 9(b) standards. *Twombly*, 550 U.S. at 551, 570 (holding that the plaintiffs' allegation that defendants had entered into an anti-competitive conspiracy made "upon information and belief," without more, failed to provide "enough facts to state a claim to relief that is plausible on its face"); *Funk v. Stryker Corp.*, 673 F. Supp. 2d 522, 525 (S.D. Tex. 2009) (stating that the court would review allegations based upon information and belief under *Twombly*'s 12(b)(6) formulation, "requiring sufficient fact pleading to make a claim plausible"), aff'd by 631 F.3d 777 (5th Cir. 2011).

22

Like in *Twombly*, Harman does not plead facts sufficient to support even an inference that his "false certification" allegation is plausible on its face.  Rather, Harman points only to a letter that the FHWA purportedly sent to Trinity in 2010 in response to a request to accept a different post configuration not at issue in this suit, in which the FHWA states in boilerplate: "You will be expected to certify to potential users that the hardware furnished has essentially the same chemistry, mechanical properties, and geometry as that submitted for acceptance."  Cplt. ¶ 30.  Such boilerplate language from an FHWA letter, not authored by Trinity, cannot give rise to an inference that Trinity ever made any such certification or statement to purchasers of the ET-Plus, let alone that it was false.

Despite conceding that he has no personal knowledge that Trinity ever made this alleged statement to any customer who purchased an ET-Plus, Harman asks the Court to speculate that false certifications must have been made.  *Id.* ¶ 38 ("*On information and belief* … it *necessarily* provided a false certification.").  Allowing Harman to plead "on information and belief" the essential element of his FCA claim (the existence of a false statement or claim) is contrary to the law, and should be rejected.

**3.     Harman does not allege that the United States government paid any money based on a purported false statement or claim by Trinity.**

Harman also fails to plead a causal link between any alleged certification by Trinity to private customers who purchased an ET-Plus and any government payment, other than to allege in purely conclusory terms that the United States "paid money to Defendants and/or various highway contractors for the fraudulent claims either directly or through payments made to the various States under the Federal Highway Aid Program."  *Id.* ¶ 42.

Traditional causation requirements, including pleading but-for causation, apply to FCA claims.  *United States v. Hibbs*, 568 F.2d 347, 349 (3d Cir. 1977) (holding that "a causal

connection must be shown between loss and fraudulent conduct" under the FCA); *see also Patton*, 418 Fed. Appx. at 369 (false claim must cause the government to pay out money or forfeit moneys due); *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1219 (10th Cir. 2008) (FCA applies only if a false certification "leads the government to make a payment which it would not otherwise have made"); *United States ex rel. Sanders v. N. Am. Bus Indus., Inc.*, 546 F.3d 288, 299 (4th Cir. 2008) (where government's reimbursement did not depend on defendant's false statement, plaintiff could not prove that defendant's "allegedly false statement or conduct caused the government to pay out money or forfeit money due").

Harman must therefore plead "sufficient factual matter" to state a plausible claim—not just conclusory assertions—that but-for Trinity's alleged representations to private customers about its product, the federal government would not have reimbursed states for ET-Plus systems installed on highways. *Twombly*, 550 U.S. at 555-57. Harman fails to establish this causal link. Other than pleading on information and belief that Trinity made a statement to "contractor-purchasers" that the ET-Plus purchased by a customer conformed to the unit approved by the FHWA (Cplt. ¶ 38), Harman alleges no facts about what contractors represented, if anything, about the ET-Plus in any invoices actually submitted to states.  Nor does he allege what any state represented, if anything, about the ET-Plus in any claims for reimbursement to the federal government.  In fact, Harman's Complaint omits any facts showing that a state actually submitted claims for reimbursement to the federal government that were tied in any way to the representation allegedly made by Trinity some three steps removed from the government's payment decision.  Simply stated, the Complaint, as drafted, asks this Court to take an illogical, unsupported factual leap from private contractors to state government agencies and finally landing at the federal government without any factual allegations to support such a leap.

Harman's failure to plead these basic facts and to show a causal link between Trinity's alleged representation to its customers and a payment decision by the federal government requires dismissal.

### C. Harman's Complaint fails to state an FCA claim based on Trinity's 2005 submission to the FHWA.

The factual allegations Harman pled in his Complaint fare no better. The crux of Harman's Complaint is that Trinity made changes to the ET-Plus "[b]etween 2002 and 2005" and allegedly failed to disclose "the 2005 changes to the ET-Plus" to the FHWA in July 2005 in its "submission to the FHWA specifying eight (8) changes that were made to the ET-Plus system." Cplt. ¶¶ 2, 14, 17, 19, 21-24. At most, Harman is alleging that in 2005, Trinity:

- did not submit with the crash test report to the FHWA a "scalable drawing" showing the 4 inch guide channel on the ET-Plus that had been crash tested, despite acknowledging that Trinity later "provided to the FHWA one drawing … that shows a four inch feeder channel" and that the FHWA was fully aware of this change in 2012 when the agency confirmed its continued acceptance of the ET-Plus for use on federal highways, and

- did not provide the agency with proprietary fabrication drawings showing four fabrication revisions in the manufacturing process or resubmit an application for acceptance to the FHWA, despite being under no obligation or expectation to do so.

*Id.* ¶¶ 14-21.[12] This does not state a claim under the FCA.

First, as discussed above, Harman cannot establish an FCA violation by merely alleging a violation of the FHWA's guidance and rules concerning the testing and acceptance of products by the agency. To the contrary, it is well-established that "the FCA is not an appropriate vehicle for policing technical compliance with administrative regulations" and that "violations of agency restrictions are not fraud unless the violator knowingly lies to the government about them."

---

[12] At the same time, Harman concedes that Trinity provided FHWA documentation showing the five-to-four-inch reduction. Cplt. ¶ 16.

*United States ex rel. Ramadoss v. Caremark, Inc.*, 586 F. Supp. 2d 668, 691 (W.D. Tex. 2008) (quoting *Southland Mgmt. Corp.*, 326 F.3d at 682); *see also Steury*, 625 F.3d at 268; *Foster*, 587 F. Supp. 2d at 813.

Harman does not and cannot, as a matter of law, plead that Trinity had any obligation to notify the FHWA of the five challenged revisions in its own internal welding and fabrication process.   Apparently, Harman builds his entire FCA case against Trinity on two erroneous premises: first, that "[a]ny modification," revision, or change to a product—no matter how inconsequential to its functionality—requires additional testing and submissions to the FHWA; and second, that FHWA guidance requires manufacturers to provide the agency with "scalable" drawings depicting every facet of a product and proprietary weldment or fabrication drawings that reveal not how the product is designed, but how it is manufactured.  *See* Cplt. ¶¶ 15, 16, 29. Both premises fail as a matter of law.

First, NCHRP 350, the guidance used by the FHWA to determine whether highway safety products are accepted for use on the National Highway System, expressly allows a designer to make changes to a product without having to retest or seek reacceptance.   As previously discussed in section III of the Statement of Facts, NCHRP 350 specifically acknowledges that it is not uncommon for a designer/tester to make design changes to roadside hardware such as the ET-Plus to improve its performance after it has been tested and accepted for use on the National Highway System.   NCHRP 350 § 3.1.  Changes do not automatically require a new series of crash tests.   "[G]ood engineering judgment" must be exercised by the designer/tester to determine if "there is a reasonable uncertainty regarding the effect the change will have on the test."  *Id*.  If there is no uncertainty regarding the proposed design changes, then the test series need not be repeated.

26

Even the agency guidance document on which Harman relies confirms that changes to a product can be made after testing and acceptance, without having to retest and resubmit an acceptance request.  *See supra*, Statement of Facts, section IV.  In the 1997 Policy Memo, the FHWA acknowledges as much when it states that FHWA reserves the right to modify or revoke its acceptance if "the device being marketed is *significantly different* from the version that was crash tested."  1997 Policy Memo (emphasis added).  Contrary to Harman's theory that no post-crash changes are ever allowed, the FHWA recognizes that changes can be made to devices being marketed as long as the device is not "significantly different" from the version that was crash tested.

In his Complaint, Harman cites to an FHWA guidance memorandum that was not issued until May 21, 2012, *some seven years after the alleged conduct occurred*.  Cplt. ¶ 28.  The 2012 Memorandum (which is for guidance only, is not a regulation, and does not impose any legally binding requirements) does not apply to the ET-Plus.  The ET-Plus, as manufactured after September 2005, is not "new" or "modified" hardware under the May 21, 2012 Memorandum.  Harman cannot seek to impose agency guidance that did not even exist at the time of the alleged conduct at issue.

Second, Harman misconstrues the FHWA guidance concerning the crash test documentation submitted with a request for approval.  NCHRP 350 states that in the test report, "[t]he test article should be fully described with engineering drawings and material specifications."  NCHRP 350 § 6.1.  There is no requirement for designers, like TTI, to submit, in addition to the multiple drawings provided, a "scalable" drawing (which Harman fails to define) that depict every detail of the product.  Equally significant, there is no requirement that proprietary fabrication drawings (that would tell the world how to make a patented product) be

submitted to the FHWA showing how a product is manufactured.  Unsurprisingly, then, Harman does not cite to any regulation imposing such a requirement.  The purpose of the crash test report is to fully document the crash testing of the product and the results so that the FHWA can evaluate how the product performed under applicable crash tests.  Harman admits that process was followed here.

Simply put, there are no legal or statutory obligations to provide the FHWA with the type of information Harman alleges, and he should not be allowed to create obligations that do not exist.  The Complaint should therefore be dismissed.  *Steury*, 625 F.3d at 268*; United States v. Prabhu*, 442 F. Supp. 2d 1008, 1032 (D. Nev. 2006) (holding that the submission of incomplete documentation supporting a claim for payment where there is no objective standard dictating what must be included is not false or fraudulent and cannot give rise to FCA liability).

### D.    Harman's Complaint is barred by the statute of limitations.

The Complaint should also be dismissed because Harman's claims are barred by the statute of limitations.  Under the FCA, claims must be brought within six years of the alleged violation or, pursuant to the FCA's tolling provision, three years from the date "when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed."  31 U.S.C. § 3731(b).

When, as here, the government declines to intervene in the action, the relator does not get the benefit of the FCA three-year equitable tolling period, and the claim may not be brought more than six years after the date on which the violation is committed.  *See Foster*, 587 F. Supp. 2d at 816 ("This Court has thoroughly considered the text of the statute, the legislative history, and the case law cited above.  Having done so, the Court is of the opinion that actions brought by a *qui tam* relator are governed by the [six-year] limitations period in § 3731(b)(1).");  *United*

28

*States ex rel. Erskine v. Baker*, 213 F.3d 638, 2000 WL 554644, at *1-2 (5th Cir. 2000) (unpublished table decision) (finding § 3731(b)(2)'s equitable tolling inapplicable to relators when the government has not intervened); *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, No. 07-CV-247, 2010 WL 1645969, at *5, *7-8 (W.D. Tex. Jan. 21, 2010) (holding that "a relator in a case where the Government does not intervene may not take advantage of the equitable tolling period" and finding that the six-year statute of limitations applied); *United States ex rel. King v. Solvay S.A.*, 823 F. Supp. 2d 472, 538 (S.D. Tex. 2011) ("This court joins the Eastern and Western Districts of Texas in concluding that the six-year statute of limitations should apply to FCA claims that are brought by *qui tam* relators when the United States does not intervene"), *vacated in part on other grounds on reconsideration*, No. H-06-2662, 2012 WL 1067228 (S.D. Tex. Mar. 28, 2012).

Accordingly, the statute of limitations bars all claims against Trinity Industries that predate March 6, 2006, *see generally* Orig. Cplt., Dkt. 1 (Mar. 6, 2012), and all claims against Trinity Highway that predate May 16, 2007, *see generally* Cplt., Dkt. 22 (May 16, 2013). The only factual allegations made by Harman in his Complaint relate entirely to changes allegedly made by Trinity to the ET-Plus "[b]etween 2002 and 2005" and Trinity's alleged failure to disclose "the 2005 changes to the ET-Plus" to the FHWA *in July 2005* in its "submission to the FHWA specifying eight (8) changes that were made to the ET-Plus system." Cplt. ¶¶ 2, 14, 17, 19, 21-24. To the extent that these allegations could state a claim under the FCA—which they do not for the reasons set forth above—they fall entirely outside of the six-year limitations period and are barred.

### E. Harman has not and cannot plead that any false or fraudulent statement by Trinity was material to a payment decision by the United States government.

In addition to alleging a false statement or claim for payment, a relator must also plead that the claim or statement was material to the government's payment decision. *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 468-69 (5th Cir. 2009); *Southland Mgmt. Corp.*, 326 F.3d at 676-77. A statement is material if it has "a natural tendency to influence, or [is] capable of influencing the payment or receipt of money or property." *Longhi*, 575 F.3d at 470 (quoting 31 U.S.C. § 3729(b)(4)); *Steury*, 625 F.3d at 267. A statement or claim is not material if the government would have paid the money or property regardless of the false or fraudulent statement. *See, e.g.*, *United States ex rel. Stebner v. Stewart & Stevenson Servs., Inc.*, 305 F. Supp. 2d 694, 698 (S.D. Tex. 2004), *aff'd*, 144 Fed. Appx. 389 (5th Cir. 2005) ("FCA liability does not exist if the alleged fraudulent act had no bearing on the Government's payment decision.").

Because Harman does not identify any false claim in his Complaint, he consequently fails to allege how any statement could have influenced a government payment decision. *See United States ex rel. Laird v. Lockheed Martin Eng. & Sci. Servs.*, 491 F.3d 254, 262 (5th Cir. 2007) ("*Laird II*"), *certiorari denied by* 552 U.S. 1023. Worse yet, Harman alleges no facts upon which the Court could reasonably infer—nor does he even attempt to show—that the disclosure of Trinity's purported changes to the ET-Plus about which Harman complains would have had any impact on the FHWA's decision to accept the ET-Plus for use on federal highways.

In fact, Harman's Complaint demonstrates the opposite: that with full knowledge of Harman's early 2012 allegations concerning changes to the ET-Plus, the FHWA confirmed in October 2012 that the ET-Plus was and continues to be eligible for federal reimbursement.

Specifically, Harman concedes that he complained to the FHWA about Trinity's alleged changes to the ET-Plus in January 2012—and that he took numerous additional steps to publicize his allegations—yet the FHWA continued its acceptance of the ET-Plus. *See* Cplt. ¶¶ 31-32, 37. Harman acknowledges that Trinity disclosed and discussed TTI's suggested five-to-four inch reduction with the FHWA and provided the agency with documentation reflecting that revision. *Id*. ¶¶ 16, 32. Harman further concedes that after the FHWA considered the alleged 5-inch to 4-inch reduction (along with Harman's other allegations about "changes" to the ET-Plus), the FHWA "continued to approve the use of the ET-Plus on the National Highway System and continued to permit that unit to qualify for Federal reimbursement." *Id*. ¶ 32. Because the FHWA confirmed its acceptance of the ET-Plus with full knowledge of Harman's allegations, there are no facts that Harman can possibly plead to show the essential element of materiality. *See Stebner*, 305 F. Supp. 2d at 698.

Harman unsuccessfully attempts to overcome this fatal defect in his FCA claim by alleging that the FHWA's continued acceptance of the ET-Plus is based on "misrepresentation[s]" by Trinity regarding what was tested in 2005. Cplt. ¶ 33 (alleging that the version tested in 2005 did not include additional non-design fabrication changes). However— even accepting these allegations as true, which they are not—Harman alleges no facts upon which the Court could reasonably infer that any additional non-design, fabrication revisions to the manufacturing process are material. Indeed, Harman's Complaint does not even directly *assert* that the FHWA would not have accepted the ET-Plus, or that it would have revoked its acceptance of the ET-Plus, but for Trinity's alleged conduct.

Therefore, as a matter of law, Trinity's alleged failure to submit information to the FHWA in 2005 regarding alleged changes to the ET-Plus could not have been material to a claim

for payment from the United States government.  *See, e.g., Southland Mgmt. Corp.*, 326 F.3d at 679-681 (Jones, J., concurring) (FCA claims fail where government would not have refused payments based on alleged false certifications).

### F.   A private litigant cannot use the FCA to circumvent the FHWA's decision-making authority.

Harman's FCA claims are nothing more than his personal disagreement with the FHWA's continued acceptance of the ET-Plus as eligible for federal reimbursement.  Harman's Complaint really challenges the validity of the FHWA's exercise of its expertise and discretion in accepting the ET-Plus—even after reviewing and considering Harman's allegations regarding alleged defects in the product.  But it is the regulatory agency—not private litigants like Harman—that is obligated and entrusted to determine which products are accepted for use on the National Highway System and for federal reimbursement.

For this reason, courts routinely refuse to extend FCA liability to claims of regulatory non-compliance like that alleged here.  *E.g.*, *Steury*, 625 F.3d at 267-68; *United States ex rel. Hobbs v. Medquest Assocs., Inc.*, 711 F.3d 707, 717 (6th Cir. 2013); *United States ex rel. Conner v. Salina Reg'l Heath Ctr., Inc.*, 543 F.3d 1211, 1221 (10th Cir. 2008).  Courts have acknowledged that the FCA should not be used by private relators to preempt decisions that are left to the discretion of federal agencies.  The court in *Connor v. Salina Regional Health Center* explained:

> To allow FCA suits to proceed where government payment of Medicare claims is not conditioned on perfect regulatory compliance—and where HHS may choose to waive administrative remedies, or impose a less drastic sanction than full denial of payment—would *improperly permit qui tam plaintiffs to supplant the regulatory discretion granted to HHS under the Social Security Act, essentially turning a discretionary denial of payment remedy into a mandatory penalty for failure to meet Medicare requirements.*

32

*United States ex rel. Conner v. Salina Reg'l Health Ctr.*, 459 F. Supp. 2d. 1081, 1087 (D. Kan. 2006) (citing *United States ex rel. Swan v. Covenant Care, Inc.*, 279 F. Supp. 2d 1212, 1222 (E.D. Cal. 2002)) (emphasis added); *cf. Caremark*, 586 F. Supp. 2d at 686 ("[T]he FCA is not a catchall provision, and if by law an existing restriction cannot be applied to a state Medicaid request, and such a restriction was applied, statutory remedies for compliance and reimbursement are appropriate, not the FCA."); *United States ex rel. Wilkins v. United Health Care Grp., Inc.*, 659 F.3d 295, 310 (3d Cir. 2011) (the FCA should not be used to "short-circuit the very remedial process [that] the Government has established to address [claims of] non-compliance with regulations"); *Stebner*, 305 F. Supp. 2d at 703-04 ("Despite the relator's best efforts to maintain his saucy intrusion, the Government and [defendant] have continued to work together" and hence relator's evidence did not demonstrate that defendant "misrepresented a material fact.").

Here, Harman asks the Court to do precisely what the cited cases hold the FCA was not intended to do:  supplant an agency's discretion and decision-making.  The FHWA has discretion to "modify or revoke its acceptance" of a product if it determines that "the device being marketed is *significantly different* from the version that was crash tested" *See* 1997 Policy Memo.  Harman asks the Court to find that Trinity's alleged changes to the ET-Plus caused it not to be acceptable for federal reimbursement under his own misguided and incorrect interpretation of FHWA standards, even though the FHWA—*after considering Harman's allegations*—has concluded the exact opposite.

Tellingly, the damages Harman seeks in his Complaint demonstrate the absurdity of allowing Harman's Complaint to proceed.  Harman seeks "[t]hree times the actual damages suffered by the United States *including an amount sufficient to cover the cost to recall and replace every defective guardrail product of Defendants placed on public roadways of the*

*United States.*"  Cplt. ¶ 44(a) (emphasis added).  In other words, Harman seeks to hold Trinity

liable for three times the cost of every ET-Plus product that it sold since 2005, plus three times

the cost to remove and replace each such product, while at the same time the FHWA (fully aware

of Harman's allegations) continues to accept the ET-Plus as eligible for reimbursement under the

Federal-Aid Highway Program.

The FHWA is obligated and entrusted with the authority and discretion to determine

whether highway safety products are acceptable for federal reimbursement.  The agency has

exercised that discretion here.  The fact that the FHWA continues to accept the ET-Plus and has

not modified or revoked its acceptance for this product proves the very point the courts made in

*Steury*, *Wilkins,* and *Conner*:  the FCA should not be used by a private litigant to circumvent

agency decision-making and expose industry participants to liability for fraud when none exists.

**IV.   Harman's Claims Should be Dismissed Because He Failed to Plead His FCA Claim With Particularity Under Rule 9(b).**

Harman's Complaint falls short of Rule 9(b)'s heightened pleading requirements in every

way.  Its most glaring deficiency is its failure to allege any particulars concerning a single false

statement or false claim for payment to the Government.  The Complaint likewise fails to

sufficiently allege scienter, materiality, or allegations specific to either Defendant.  For these

reasons, Harman's Complaint should be dismissed with prejudice under Rule 9(b). *See supra* n.

11.

**A.   The Rule 9(b) pleading standard.**

Federal Rule of Civil Procedure 9(b) requires parties to "state with particularity the

circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  The Fifth Circuit has long

held that a complaint filed under the FCA must meet the heightened pleading standards of Rule

9(b). *See, e.g.*, *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 872-73

(5th Cir. 2008); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). "Because the linchpin of an FCA claim is a false claim, the time, place and contents of false representations, as well as the identity of the person making the representation and what that person obtained thereby must be stated in a complaint alleging violation of the FCA in order to satisfy Rule 9(b)." *Rafizadeh,* 553 F.3d at 872-73; *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 903 F. Supp. 2d 473, 484 (E.D. Tex. Feb. 8, 2011). Put succinctly, a relator must "set forth the who, what, when, where, and how of the alleged fraud." *See Steury*, 625 F.3d at 266; *Rafizadeh*, 553 F.3d at 874; *Thompson*, 125 F.3d at 903.

Although in a rare case a complaint may survive if the relator cannot "allege the details of an actually submitted false claim," the complaint must nevertheless allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claim were actually submitted." *Grubbs*, 565 F.3d at 190. But conclusory allegations that false claims were presented to the government are "insufficient to serve as 'reliable indicia that leads to a strong inference that [false] claims were actually submitted.'" *Vavra*, 903 F. Supp. 2d at 487; *see also United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, No. 12-30656, 2013 WL 1749328, at *3 (5th Cir. April 3, 2013) (finding "generalized allegations of false claims presented to the Government do not 'alleg[e] *particular* details of a scheme'" under *Grubbs*).

Rule 9(b)'s requirements are far from academic. Courts consistently hold relators in FCA actions to high pleading standards for alleging fraud and routinely dismiss FCA claims under Rule 9(b). *E.g., Vavra*, 903 F. Supp. 2d at 482-87 (dismissing FCA complaint under Rule 9(b) and explaining that "[t]he Fifth Circuit applies Rule 9(b) to fraud complaints 'with bite' and 'without apology'"); *Foster*, 587 F. Supp. 2d at 824-28 (dismissing FCA complaint under Rule

9(b)); *United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 719 (N.D. Tex. 2011) (same); *United States ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 538, 545 (N.D. Tex. 2010) (same); *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 785 (S.D. Tex. 2010) (same).

Harman's Complaint does not come close to satisfying this pleading standard.

### B.    Harman does not allege with particularity that Trinity submitted a false representation or claim for payment.

As discussed above, Harman's Complaint does not allege a single false claim for payment or any false statement by Trinity that was allegedly used to get a claim paid from the United States government, let alone specify the who, what, when, where, and how of a false claim necessary to satisfy Rule 9(b)'s particularity requirement.  Despite already amending his complaint once, Harman's Complaint again violates Rule 9(b) in virtually every respect.

Nowhere in his Complaint does Harman allege: (1) who presented claims for payment to the government; (2) what was presented (*e.g.*, he does not allege a single invoice); (3) when or where such claims were presented to the government for payment; or (4) how such claims were purportedly false or resulted in a violation of the FCA.  *Steury*, 625 F.3d at 266; *Rafizadeh*, 553 F.3d at 874.

Harman makes only a conclusory statement "[o]*n information and belief*" that Trinity "*necessarily*" must have provided some unidentified false certification to private contractors that purchased an ET-Plus.  Cplt. ¶ 38.  Yet, Harman does not allege any specific factual allegations about what representations were purportedly made by Trinity to customers, who made them, how those representations were false, or how these unidentified certifications to private contractors actually resulted in a false claim for payment to the federal government.  *See Id.* ¶¶ 38-39. Notably, Harman does not allege a single example of a certification or an invoice from a

customer to a state agency or the federal government; nor does he allege any facts demonstrating how the contents of these purported certifications or invoices were false.

As with Rule 12(b), courts do not allow relators to circumvent Rule 9(b)'s requirements by pleading the alleged fraud in FCA suits on information and belief. *See United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999); *Foster*, 587 F. Supp. 2d at 820-21; *see also United States ex rel. Marlar v. MWXT Y-12, L.L.C.,* 525 F.3d 439, 445-46 (6th Cir. 2008).  By merely reciting, on "information and belief," legal conclusions regarding "false certifications" or "false claims" (Compl. ¶¶ 2, 38, 39), Harman has failed to satisfy the particularity requirements of Rule 9(b).  *See Vavra*, 903 F. Supp. 2d at 484, 487 (holding that to satisfy Rule 9(b), "the plaintiff must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent" and finding "conclusory allegations" that subcontracts were inflated by kickbacks and that defendant "subsequently invoiced those costs to the Army" insufficient under Rule 9(b)).

### C.   Harman does not allege the elements of scienter or materiality with particularity.

In addition, Harman must allege with particularity the factual details of Trinity's knowledge of any alleged false claim or misrepresentation and the material effect the claim had on the government's payment decision.  Harman's Complaint comes nowhere close to satisfying this stringent standard.

First, the Complaint fails to allege any knowledge on the part of Trinity sufficient to satisfy Rule 9(b).  To state an FCA claim, a relator must allege "guilty knowledge of a purpose on the part of the defendant to cheat the Government." *United States ex rel. Taylor-Vick v.*

*Smith*, 513 F.3d 228, 231 (5th Cir. 2008).[13]   Although Rule 9(b) allows knowledge to be alleged generally, "simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)."  *Dorsey v. Portfolio Equities Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).  Instead, to plead scienter adequately, "a plaintiff must set forth specific facts that support an inference of fraud." *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 667 (5th Cir. 2004). A plaintiff may not conclusorily plead that "the defendants knowingly did this or recklessly did that."  *Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994).

Here, Harman simply recites a legal conclusion alleging that Trinity "knowingly" made a false claim or false record to get a false claim paid.  Cplt. ¶ 41.  He does not state how Trinity allegedly acted with "guilty knowledge" or intended to "cheat the Government."  *Taylor-Vick*, 513 F.3d at 231.  Harman does not even identify who at Trinity made any alleged false statements or certifications or how that person would have known the statement was false. Harman provides no factual allegations that would indicate anyone at Trinity intentionally, knowingly, or recklessly misrepresented anything about the ET-Plus to customers or the federal government.  In fact, Harman's Complaint acknowledges the opposite.  Trinity disclosed and discussed with the FHWA one of the very "changes" to the ET-Plus Harman now complains about and provided the agency with documentation reflecting that "change."  Cplt. ¶¶ 16, 32. Harman's hornbook recitation of the knowledge element is insufficient under Rule 9(b), and his FCA claim should be dismissed for this reason.  *See Dorsey*, 540 F.3d at 339.

In addition to specifically alleging a false claim and scienter, a relator must also plead with particularity that the claim or statement was material to the government's payment.  *Longhi*,

---

[13]  The FCA defines knowledge to mean that a person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information."  31 U.S.C. § 3729(b)(1).

575 F.3d at 470 (quoting 31 U.S.C. § 3729(b)(4)); *Steury*, 625 F.3d at 267.  As discussed in Section III.E., Harman cannot plead under Rule 12(b)(6) how any unidentified certifications to Trinity's customers or false claims were material to a payment decision by the federal government.  He likewise cannot provide any factual details under the more stringent Rule 9(b) standard that would show how the changes to the ET-Plus he complains of and the alleged failure to provide certain manufacturing drawings to the agency in 2005 would have affected the government's ultimate payment decision.  This is especially true where he concedes that the FHWA continues to accept the product as eligible for federal reimbursement after considering Harman's allegations.

### D.    Harman fails to plead any allegations specific to either defendant.

In addition to Harman's other pleading defects, the Court should dismiss the Complaint because it names as defendants two separate corporate entities—Trinity Industries and Trinity Highway—but does not make a single allegation specific to either one.  Instead, every allegation merely refers to the defendants collectively as "Trinity."  Where Rule 9(b) applies, as it does to claims under the FCA, Harman cannot simply plead his allegations generally against "defendants" or "Trinity" without specifying which entity purportedly did what in the alleged fraud.

When there is more than one defendant, the plaintiff must satisfy Rule 9(b) as to each defendant.  *See United States ex rel. Barrett v. Johnson Controls, Inc.*, No. 3:01-CV-1641-M, 2003 WL 21500400, at *10 (N.D. Tex. April 9, 2003) ("Allegations that lump all defendants together, failing to segregate the alleged wrongdoing of one from those of another, do not satisfy the requirements of Rule 9(b)."); *United States ex rel. Stewart v. La. Clinic*, No. 99-1767, 2002 WL 1066745, at *2 (E.D. La. May 28, 2002) (dismissing FCA claims against clinic and four physicians where the allegations simply "lump[ed] all defendants together, failing to segregate

the alleged wrongdoing of one from those of another" for failure to comply with Rule 9(b)); *see also United States ex rel. Bledsoe v Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) ("A complaint may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.").

Accordingly, because Harman does not allege a single act specific to either defendant— let alone the specifics of the "who, what, when, where, and how" regarding how each defendant purportedly violated the FCA—Harman's Complaint should be dismissed under Rule 9(b).

## CONCLUSION

For the foregoing reasons, Trinity respectfully requests that the Court dismiss this action for lack of subject matter jurisdiction, or alternatively, dismiss the Complaint in its entirety with prejudice as to Harman for failure to state a claim, and grant such other and further relief as Trinity may be justly entitled.

Dated:  June 19, 2013

Russell C. Brown, Esq.
Texas Bar No. 03167510
THE LAW OFFICES OF
RUSSELL C. BROWN, P.C.
P.O. Box 1780
Henderson, Texas 75653-1780
Telephone:  903.657.8553
Fax:  903.655.0218
russell@rcbrownlaw.com

J. Mark Mann, Esq.
Texas Bar No. 12926150
MT2 LAW GROUP
300 West Main Street
Henderson, Texas 75652
Telephone: (903) 657-8540
Fax: (903) 657-6003
mm@themannfirm.com

Mike Miller
Texas Bar No. 14101100
201 W. Houston St.
Marshall, Texas 75670
Telephone:  (903) 938-4395
Fax: (903)938-3360
mikem@millerfirm.com

Respectfully submitted,

TRINITY INDUSTRIES, INC.
TRINITY HIGHWAY PRODUCTS, LLC

/s/ Ethan L. Shaw_____
Ethan L. Shaw
Texas Bar No. 18140480
SHAW COWART LLP
1609 Shoal Creek Blvd., Ste. 100
Austin, Texas 78701
Telephone:  (512) 499-8900
Fax:  (512) 320-8906 Fax
elshaw@shawcowart.com

Sarah R. Teachout
Texas Bar No. 24008134
Arnold Spencer
Texas Bar No. 00791709
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4624
Telephone:  214-969-2800
Fax:  214-969-434
steachout@akingump.com
aspencer@akingump.com

Heather Bailey New
Texas Bar No. 24007642
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas  75219
Telephone:  214.651.5132
Fax:  214.200.0530
heather.new@haynesboone.com

**Attorneys for Defendants, Trinity Industries, Inc. and Trinity Highway Products, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on counsel for all parties via the Court's CM/ECF system on this 19th day of June, 2013.

*/s/ Ethan L. Shaw* _____

**APPENDIX**

| Tab | Document |
|-----|----------|

1.   January 27, 2012 Screen Shot from Harman's website, www.failingheads.com.

2.   January 30, 2012 Screen Shot from Harman's website, www.failingheads.com.

3.   Defendant's Motion for 30 Day Extension, Case No. 2:12-cv-00046, Dkt. 4 (E.D. Tex. Feb. 29, 2012) (noting that Presentation is attached).

4.   Defendants' Original and Amended Answers in the Patent Lawsuit, Case No. 1:11-cv-00937, Dkts. 25, 46, 94 (E.D. Va. 2011 & 2012).

5.   Trinity's August 10, 2005 Submission to the FHWA, produced to Harman in response to a FOIA Request.

6.   FHWA's September 2, 2005 Acceptance Letter CC-94, produced to Harman in response to a FOIA Request.

7.   Internet Archive of FHWA Website on May 20, 2009 posting 2005 Acceptance Letter CC-94 and Authenticating Affidavit of Christopher Butler.

8.   Defendant's Reply to Plaintiffs' Response in Opposition to Defendant's Motion to De-Designate, Case No. 2:12-cv-00046, Dkt. 64 (E.D. Tex. Apr. 29, 2013).

9.   Defendant's Opposition to Plaintiffs' Motion to Dismiss Without Prejudice, Case No. 2:12-cv-00046, Dkt. 70 (E.D. Tex. May 16, 2013).

10.  June 19, 2013 Affidavit of William Ledoux authenticating exhibits 1-6 and 8-9.

d-2170620