# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA EX REL. JOSHUA HARMAN, | § § § | |
| Plaintiff/Relator | § § | |
| v. | § § | CIVIL ACTION NO. 2:12-CV-0089 |
| TRINITY INDUSTRIES, INC. AND TRINITY HIGHWAY PRODUCTS, LLC, | § § § § | |
| Defendants. | | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

Ethan L. Shaw
Texas Bar No. 18140480
SHAW COWART LLP
1609 Shoal Creek Blvd., Ste. 100
Austin, Texas 78701
Telephone: (512) 499-8900
Fax: (512) 320-8906
elshaw@shawcowart.com

J. Mark Mann
Texas Bar No. 12926150
THE MANN FIRM
300 West Main Street
Henderson, Texas 75652
Telephone: (903) 657-8540
Fax: (903) 657-6003
MM@themannfirm.com

Mike Miller
Texas Bar No. 14101100
201 W. Houston St.
Marshall, Texas 75670
Telephone: (903) 938-4395
Fax: (903) 938-3360

Russell C. Brown
Texas Bar No. 03167510
THE LAW OFFICES OF
RUSSELL C. BROWN, P.C.
P.O. Box 1780
Henderson, Texas 75653-1780
Telephone: (903) 657-8553
Fax: (903) 655-0218
russell@rcbrownlaw.com

Sarah R. Teachout
Texas Bar No. 24008134
Arnold Spencer
Texas Bar No. 00791709
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4624
Telephone: (214) 969-2859
Fax: (214) 969-4343
steachout@akingump.com
aspencer@akingump.com

Heather Bailey New
Texas Bar No. 24007642
BELL NUNNALLY & MARTIN LLP
3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204
Telephone: (214) 740-1425
Fax: (214) 740-1499
heathern@bellnunnally.com

**COUNSEL FOR THE TRINITY DEFENDANTS**

I. **Preliminary Statement.**

Harman's Response to Trinity's Motion to Dismiss confirms several independent grounds to dismiss the Complaint. Despite two attempts to draft a pleading that can survive dismissal, Harman has shown that he cannot. *First*, Harman cannot overcome the public disclosure bar. Under either the applicable pre-2010 version of the statute or the amended version, Harman effectively concedes that his False Claims Act allegations are based entirely on publicly disclosed information, and he fails to establish that he is an original source of that information.

*Second*, Harman concedes in his Response that his *only* allegation of a false claim for payment to the United States government is his conclusory assertion that Trinity made false certifications regarding the ET-Plus to "thousands" of unnamed, non-government purchasers. Yet, Harman does not identify a single actual example of any certification ever made, despite the admitted fact that Harman's own company was a purchaser of the ET-Plus, and he concedes that he cannot allege such false certifications on anything but information and belief. Harman's allegation does not meet Rule 12(b)(6) pleading standards, much less the heightened standard of Rule 9(b).

*Third*, Harman does not attempt to allege a connection between any false certifications purportedly made to private contractors and an actual payment made by the United States government. In fact, Harman appears to take the position that he does not have to plead this essential causal element, though this omission is fatal to his Complaint.

*Fourth*, Harman does not address Trinity's materiality and scienter arguments or provide the Court with any basis for concluding that those essential elements of an FCA claim have been sufficiently pled.

*Fifth*, Harman now contends that his FCA claim is not based on anything Trinity did in 2005, but on false certifications purportedly made since then. Harman nonetheless does not

identify any false certification made by Trinity within the six-year limitations period.  Harman's FCA claim is therefore barred by the statute of limitations.

*Sixth*, Harman concedes in a footnote that he cannot plead a single allegation particular to either of the two Trinity defendants, and he does not attempt to refute any of the controlling cases that require him to do so.[1]

## II.     The Public Disclosure Bar Precludes Harman's Claims.

Harman effectively concedes that his Complaint is based upon publicly disclosed information.  In his Response, he makes two unavailing arguments for why he qualifies as an "original source" of the information.  First, despite the fact that Harman himself cited the pre-2010 version of the FCA in his Complaint, he argues that he is an original source under the 2010 amendments to the public disclosure bar.  Those amendments do not apply here and, in any event, would not save Harman's Complaint.  Second, Harman argues that he qualifies as an original source of information about Trinity's alleged changes to the ET-Plus because he learned of them through "independent" measurement of the publicly-available units and through aggregation of public information.  This argument likewise has been tried and rejected by the Fifth Circuit.

### A.     The pre-2010 public disclosure bar applies.

As an initial matter, the pre-2010 version of the public disclosure bar applies to and bars Harman's Complaint.  That is the version Harman pled in both his Original *and* Amended

---

[1] Harman asks for "leave to amend his Complaint" if the Court finds he has not adequately alleged his FCA claim. Resp. at 30, n.16.  But he does not say how he will cure the deficiencies; nor can he, as he acknowledges his FCA claim is based on information and belief.  Harman has already had two chances to amend his complaint.  Any further attempts would be futile.  *See United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003); *United States ex rel. Hebert v. Dizney,* 295 Fed. Appx. 717, 723 (5th Cir. 2008).  Dismissal with prejudice is therefore proper.  If the Court determines that further amendment is appropriate, the Court should stay discovery until Harman files his Second Amended Complaint and the Court has an opportunity to consider and rule upon any responsive pleadings filed by Defendants.  *See* Dkt. 32.

Complaints. *See* Cplt ¶ 9; Orig. Cplt. ¶ 5 (alleging "direct and independent knowledge" of publicly disclosed information—language appearing only in the pre-2010 statute). Moreover, as explained in the Motion (Mtn. at 28-29) and in Section VI below, Harman does not make any factual allegations occurring after March 23, 2010—the date of the amendments to the public disclosure bar—to support his FCA claim, and the only conduct he does allege occurred well before 2010. Thus, even if Harman had pled his FCA case under the amended statute, the Court should not apply it retroactively to the pre-2010 conduct alleged in Harman's Complaint.

Harman cites no authority for applying the amended statute, and the law does not support such an application. The Supreme Court has previously declined to apply amendments to the public disclosure bar retroactively to conduct occurring prior to their effective date. *See Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 946-47, 951-52 (1997) (holding that 1986 public disclosure bar amendments affected litigants' substantive rights and thus did not apply retroactively to conduct occurring pre-amendment, even where suit was filed post-amendment). The 2010 amendments to the public disclosure bar likewise affect litigants' substantive rights and should not be applied retroactively to conduct occurring prior to March 23, 2010. *See* Pub. L. No. 111-148, 124 Stat. 119, 901, § 10194(j)(2) (Mar. 23, 2010); *United States ex rel. Lockey v. City of Dallas*, No. 3:11-cv-354, 2013 WL 268371, at *5 (N.D. Tex. Jan. 23, 2013) (citing *Hughes* and holding that the 2010 public disclosure bar amendments "are not retroactive because they change the existing cause of action for *qui tam* defendants" and, thus, "do not apply to conduct that occurred before their effective date") (internal quotations omitted).[2]

---

[2] The Fifth Circuit has not explicitly addressed whether the 2010 amendments to the public disclosure bar apply to pre-2010 conduct. Two Fifth Circuit cases held in footnotes that the amendments did not apply to *complaints* pending prior to 2010, but did not address whether they would apply to pre-2010 *conduct* if the complaints had been filed post-2010. *See Little v. Shell Expl. & Produc. Co.*, 690 F.3d 282, 292 n.11 (5th Cir. 2012); *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 n.6 (5th Cir. 2011). Additionally, the court in *Stennett v. Premier Rehabilitation Hosp., LLC,* 479 Fed. Appx. 631, 633-36

3

### B. Harman's allegations are based on public disclosures.

Harman essentially concedes that his allegations are all based on public disclosures. While Harman asserts weakly that he cannot be the source of the public disclosures, he does not dispute the public disclosures Trinity cites of which he was not the source. Those disclosures alone are sufficient to satisfy the first two prongs of the public disclosure bar. *See* Mtn. at 14-16 (citing Spig/Selco pleadings, FOIA disclosure, and FHWA website). Moreover, as Harman must concede, his argument that he cannot be the source of public disclosures is directly contradicted by on-point and controlling Fifth Circuit law. Resp. at 11; *U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Services Co.*, 336 F.3d 346, 352 n.2 (5th Cir. 2003).

### C. Harman is not an original source under the pre-2010 public disclosure bar.

Harman cannot show that he is an original source under the applicable pre-2010 public disclosure bar. Harman's Complaint is premised on his claim that Trinity made changes to the ET-Plus that it did not disclose to the FHWA. Harman does not dispute that he is not an original source of information about what Trinity did or did not disclose to the FHWA.[3] Thus, he can only argue that he is an original source of information about Trinity's alleged changes to the product. But it is undisputed that he derived that information entirely from public sources.

---

(5th Cir. 2012), in an unpublished decision, cited to language from the post-2010 public disclosure bar in a case arising out of pre-2010 conduct. The court's citation to the amended language appears to be administrative error, however, as the court did not address an argument on retroactivity or even attempt to distinguish *Hughes*. Moreover, the lower court and both parties relied on the pre-2010 version of the statute without argument. In any event, if the Court finds *Stennett* controlling, *Stennett* applied the Fifth Circuit's public disclosure bar standards established for the pre-2010 version of the statute. *See id*.

[3] It is undisputed that Harman relied on other sources to discover Trinity's alleged non-disclosures to the FHWA. Resp. ¶¶ 15, 21; Mtn. at 15; Mot. App. 5-6. In addition to the public FHWA documents obtained through a FOIA request and online, Harman also contends that he obtained such information through mining discovery and testimony from the Patent Litigation brought by Trinity and Texas A&M against Harman's companies, SPIG and Selco. Harman appears to argue that unfiled discovery cannot be the source of a public disclosure (Resp. at 10 & n.5), but he confuses the issue. Information obtained second-hand through even confidential discovery is not direct and cannot make a relator an original source. *See, e.g.*, *United States ex rel. Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1159 (2d Cir. 1993) (relator was not the original source of information obtained through discovery in litigation).

As shown in Trinity's Motion, Harman conceded in the Defamation Lawsuit that all of his allegations about Trinity's changes to the ET-Plus were "meticulously compiled … *from public sources*." Mtn. at 16. Harman criticizes Trinity for taking this admission out of context. *See* Resp. at 9-10. However, Harman does not explain how the context somehow changes its meaning—nor does he deny that it is accurate. To the contrary, Harman confirms in his Response that he derived his information about Trinity's alleged changes from measuring ET-Plus units that are publicly accessible on the highways. *See id*. at 13. Those measurements were available to any member of the public with a tape measure and some free time.[4]

Under prevailing Fifth Circuit law, where information is "available to any member of the public who wanted to find" it, the relator's knowledge is not direct and independent. *See U.S. ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 525 (N.D. Tex. 2012); *see also United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 178-79 (5th Cir. 2004). Yet, Harman argues that he is an original source because he measured "ET-Plus devices installed on the highways" and "aggregated a considerable amount of outside information" derived from public sources. Resp. at 13. Such investigation and aggregation of public information does not make Harman an original source. *See Reagan*, 384 F.3d at 178-79.

Accordingly, courts in the Fifth Circuit and elsewhere have consistently considered and rejected "investigation and aggregation" arguments where, as here, all of the relator's allegations were derived from public sources. *See, e.g., Id.*, 384 F.3d at 178 (finding that relator's knowledge was indirect where it was "based on research and review of public records, not, with minor exceptions, her own observation"); *Colquitt*, 864 F. Supp. 2d at 525 (holding that relator's use of expertise "to discover the relationship between the stent sizes and their intended use" did

---

[4] Harman himself made this point explicitly in the Defamation Lawsuit, admitting that the measurements were "available to anyone who bothers to use a tape measure." Case No. 2:12-cv-00046, Dkt. 16 (E.D. Tex. Dec. 17, 2012) at 3.

5

not make him an original source because "[t]he dimensions and physical characteristics of the … stents were available to any member of the public who wanted to find them").[5]

Harman nonetheless cites *Reagan* to argue that the knowledge he derived from measuring the publicly-available ET-Plus units makes his knowledge independent because it "add[ed] an 'additional compelling fact' or a 'new and undisclosed relationship between disclosed facts.'" Resp. at 12-13.[6] Harman misreads *Reagan*. Under *Reagan*, the critical additional information or connection that the relator brings forward must come from *non-public* sources. *See Reagan*, 384 F.3d at 178-79. Unsurprisingly, the other cases Harman cites in support of his original source argument do not hold otherwise. In *United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 800 (E.D. La. 2009), for example, the court found that a consulting firm retained by Allstate was an original source of alleged fraud it observed in its examination of fifty-seven Allstate-owned properties. Unlike here, the firm's examination consisted of a review of non-public information that was "nowhere previously available." *See id*.

---

[5] *See also, e.g.*, *United States ex rel. Doe v. Staples*, No. 08-846, 2013 WL 1192982, at *4-5 (D.D.C. Mar. 22, 2013) ("talking with industry insiders, analyzing trade data, and 'hiring investigators …'" did not make relator an original source where the alleged fraud "would have been ascertainable by any person who read the [government] reports and looked at the pencils stocked on defendants' shelves"); *United States ex rel. Lewis v. Walker*, 438 Fed. Appx. 885, 888 (11th Cir. 2011) (relators were not an original source of information obtained and compiled "through FOIA and GORA requests, previous litigation, government reports and a journal article"); *United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 59-60 (1st Cir. 2009) ("Knowledge that is based on research into public records, review of publicly disclosed materials, or some combination of these techniques is not direct."); *United States v. Applera Corp.*, 155 Fed. Appx. 291, 292-93 (9th Cir. 2005) (holding that relator was not an original source where, "[d]espite [relator]'s extensive investigative efforts, its knowledge was either obtained from publicly available patent materials, journal articles, and grant applications, or derived secondhand from Dr. Henry Huang's research notes and grant files"); *United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1052-54 (10th Cir. 2004) (relator did not have direct or independent knowledge of fraud based on "investigation [that] entailed telephone calls to gather common information, pictures taken from a public road and the review of easily attained records").

[6] Harman actually made a contradictory argument in his Opposition to Trinity's Motion to Stay Discovery, filed just days before his Response. There, he asserted that he "has no other significant source of information concerning Trinity's secret unauthorized alteration of its ET-Plus system" aside from the documents Trinity produced in the Patent Lawsuit. Dkt. 34 at 12. Any information Harman derived from documents Trinity produced in discovery, of course, is not direct.

at 800-801.  In all of the other cases on which Harman relies, the courts found that the relators' knowledge was derived from public sources and was *not* direct and independent.  *See Reagan*, 384 F.3d at 178; *Colquitt*, 864 F. Supp. 2d at 525; *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 443 (5th Cir. 2008); *Ondis*, 587 F.3d at 59-60.

In any event, the additional facts and undisclosed connections Harman claims his investigation uncovered do nothing to reveal fraud.  As discussed within, Harman concedes that he has no knowledge—direct, independent, or otherwise—of any false or fraudulent claims.

### D. Harman is not an original source under the post-2010 public disclosure bar.

Finally, even if the Court applies the post-2010 public disclosure bar, Harman still is not an original source of information about Trinity's alleged changes.  Harman claims that he is an original source because he publicly disclosed information underlying his Complaint only after he disclosed it to the federal government.  *See* Resp. at 9.  However, it is undisputed that all of the information regarding Trinity's alleged changes to the ET-Plus was publicly disclosed prior to the day in January 2012 when Harman alleges that he met with the FHWA.  *See* Cplt. ¶ 31. Specifically, Harman's alleged disclosure to the government came *after* at least the following public disclosures, which Harman does not dispute: (1) the FHWA's September 2, 2005 Acceptance Letter (published on the FHWA's website at least as of May 2, 2009); (2) Harman's companies' original answer in the Patent Litigation (Nov. 4, 2011); and (3) Harman's companies' amended answer in the Patent Litigation (Dec. 30, 2011).  Thus, the 2010 amendments to the public disclosure bar would not save Harman's Complaint.[7]

---

[7] Because Harman attempts to rely on a different version of the public disclosure bar than what he pled in his Complaint for the first time in his Response, if the Court determines the amended version of the statute applies to any of Harman's claims, Trinity requests the opportunity to provide additional briefing to more fully address its application to Harman's claims.

7

### III.     Harman Does Not Plead a Single False Claim for Payment to the Government.

In his Response, Harman concedes that his Complaint does not identify a false claim or certification allegedly made by Trinity to the government. Harman does not attempt to plead or argue that Trinity submitted any claims for payment directly to the government or that it caused someone else to submit a claim for payment. For this reason, his Complaint is fatally deficient. Harman acknowledges that his only allegation of "fraudulent statements" by Trinity is his conclusory claim that Trinity made false certifications about the ET-Plus to "thousands" of non-government contractors who purchased the product. *E.g.,* Resp. at 20. He makes this allegation, though, on nothing but "information and belief." Cplt. ¶ 38. This allegation is not sufficient to state a claim under Rule 12(b)(6), and does not come close to satisfying Rule 9(b).

####     A.     Harman's "information and belief" allegation cannot support an FCA claim.

To survive a motion to dismiss, a plaintiff cannot base his claim on naked assertions devoid of further factual development. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Funk v. Stryker Corp.*, 673 F. Supp. 2d 522, 525 (S.D. Tex. 2009). Harman's Complaint fails to allege any facts supporting his information and belief allegation that Trinity made any false certification to customers. In fact, the only support Harman points to in his Complaint—boilerplate statements made by the FHWA and not Trinity (Cplt. ¶ 30)—Trinity refuted in its Motion to Dismiss (Mtn. at 23) and Harman does not address in his Response. Harman now suggests that the Court should *assume* that false certifications were made to Trinity's customers because such a certification requirement is somehow contained in a non-binding guidance memorandum that the FHWA did not issue until May 21, 2012.[8]

---

[8] Harman concedes that an earlier 1997 FHWA policy memorandum "is controlling on all of Trinity's conduct alleged in the Complaint." Resp. at 18. That version of the memo (attached as Appendix B to Harman's Response) does not address or identify any requirement to make a certification to purchasers of end-terminals.

8

Resp. at 15. The guidance document that Harman points to does not address or identify any requirement to make a certification to purchasers of an end-terminal product or address what, if any, statements manufacturers should make to their customers. Without pleading any factual support for his beliefs, Harman asks the Court to speculate and infer that some sort of certification was made. This does not satisfy even basic notice pleadings standards under Rules 8 and 12(b)(6). *Twombly*, 550 U.S. at 570.

Harman's allegations also fail under the heightened pleading standards of Rule 9(b). *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010); *United States ex rel. Rifizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2009). First, Harman concedes that he cannot identify the contents of a single purported false certification by Trinity to a customer on anything other than information and belief. Resp. at 26. Information and belief pleading is not sufficient under Rule 9(b) as a matter of law. *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308-09 (5th Cir. 1999) (declining to allow a relator to plead upon "information and belief" because such an exception to the pleading requirements for fraud would be contrary to both Rule 9(b) and the FCA); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997); *United States ex rel. Foster v. Bristol-Myers Squibb Co.,* 587 F. Supp. 2d 805, 822-26 (E.D. Tex. 2008). On this basis alone, Harman's Complaint should be dismissed.

Further, Harman does not identify the "who, what, when, where, and how" of any false claims. *See* Resp. at 26-29. "Because the linchpin of an FCA claim is a false claim, the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby must be stated in a complaint alleging a violation of the FCA in order to satisfy Rule 9(b)." *Rifizadeh*, 553 F.3d at 873; *United States ex*

9

*rel. Vavra v. Kellogg Brown & Root, Inc.* No. 1:04-cv-42, 2011 WL 9210456, at *7 (E.D. Tex. Feb. 8, 2011). Harman must therefore allege the "who, what, when, where, and how" of the purported fraudulent certifications—not of the alleged changes to the ET-Plus. *Rafizadeh*, 553 F.3d at 874. He does not even come close.

Harman concedes he cannot plead "what" Trinity purportedly said to its customers or how it was allegedly false. Resp. at 26-27. This omission is especially telling given that Harman's own companies purchased the ET-Plus.[9] As to the "who," "when," and "where" particulars, Harman only points to "two Trinity employees" allegedly involved in "modifications to the ET-Plus." Resp. at 26. He does not identify anyone who made purported false certifications (or even which Trinity entity allegedly made them), nor does he identify a single "contractor-purchaser" to whom they were supposedly made. Harman further concedes that he cannot identify when Trinity made any of its unidentified false certifications. *Id*. at 27. He instead argues that "[t]he photographic evidence of numerous post-2005 installations in Compl. Ex. A clearly supports" the *inference* that "Trinity's secret modifications and fraudulent certifications had been continually occurring '[s]ince 2005.'" *Id*. This "photographic evidence" does not support when, if ever, Trinity allegedly made false certifications to customers. Harman further can point to only the location of a "meeting between Trinity and FHWA administrators" and the locations of installed ET-Plus units. *Id*. at 28. These allegations have nothing to do with any false certification to customers.[10] Finally, Harman argues that "[t]he majority of Harman's

---

[9] Three documents Harman attaches to his Response confirm this fact. *See* Declaration of Joshua Harman in support of his Response ¶ 4; Affidavit of Gregory Mitchell, attached as Exhibit 1 to Harman's Response ¶ 10; Affidavit of Gregory Mitchell, attached as Exhibit 2 to Harman's Response ¶ 5.

[10] Despite stating that his FCA claim is based on false certifications to Trinity's customers (and not the 2005 FHWA eligibility submission), Harman attempts to rely on allegations concerning meetings with "FHWA administrators" or on a bald, unspecific assertion "that certifications were 'made to every state.'" *Id*. These allegations do not even relate to his claim that false statements were made to Trinity's customers and do not come close to satisfying Rule 9(b).

Complaint clearly has to do with the 'how' element of Trinity's fraudulent scheme." *Id*. at 29. Every allegation he points to, however, concerns Trinity's alleged changes to the ET-Plus and its 2005 FHWA submission—and not Trinity's purported false certifications to "thousands" of customers. *Id*.

Effectively conceding that he cannot plead particulars of a false claim, Harman attempts to rely on *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189 (5th Cir. 2009) to save his Complaint. *See* Resp. at 24-25. *Grubbs* does not, though, allow a relator to simply omit all factual allegations showing a false claim for payment to the government or plead the core elements of a false claim on information and belief. *Grubbs,* 565 F.3d at 191-92.[11] While the physician in *Grubbs* did not detail the bills his employer submitted to Medicare, the relator described in detail a "fraudulent billing scheme," including names, specific dates that false claims were submitted, the types of services that were falsely billed, and the defendants' attempts to involve the relator in the fraudulent billing scheme. *Id*. at 184, 191-94. Here, by contrast, Harman cannot plead any details about what certifications were made, how they were false, or how they were purportedly submitted to the government for payment. Unlike the physician in *Grubbs*, Harman is simply *guessing* about alleged false statements. He does not identify the names of anyone involved, the dates that any certifications were allegedly submitted, or the names of any customers to whom they were made. This case is a far cry from *Grubbs*, and should be dismissed.

---

[11] *See also Vavra*, 2011 WL 9210456, at *7 (finding that under *Grubbs*, "the Rule 9(b) standard requires 'specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent.'"); *United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, No. 12-30656, 2013 WL 1749328, at *3 (5th Cir. April 3, 2013) (finding *Grubbs* "does not absolve Nunnally of the burden of otherwise sufficiently pleading the time, place, or identity details of the traditional [Rule 9(b)] standard.").

### B. Harman cannot avoid the requirements of Rule 9(b).

Recognizing that his Complaint does not meet Rule 9(b), Harman is left to argue that he should be entitled to a special relaxation of Rule 9(b)'s pleading requirement. First, Harman argues that he does not have to allege fraud by Trinity with particularity because "the thousands of certifications that Trinity issued are not available to Plaintiff, and are 'peculiarly within [Trinity's] knowledge.'" *Id*. at 29. Harman cites nothing for this assertion, and it is false. Indeed, Harman's own companies purchased the ET-Plus from Trinity, and thus, Harman was in possession of whatever documents Trinity submitted to his companies in connection with those sales. Moreover, each of the unidentified "thousands" of other customers to whom Harman alleges Trinity made the certifications are equally as likely to have that information as Trinity.[12] Harman certainly is not entitled to a relaxed pleading standard on this ground. *See Russell*, 193 F.3d at 308 (relaxed pleading standard did not apply where "documents containing the requisite information were possessed by other entities"); *Foster*, 587 F. Supp. 2d at 821 (same).

Second, Harman argues that he should be excused from meeting Rule 9(b)'s requirements because Trinity's "alleged fraud (i) occurred over an extended period of time, and (ii) consisted of numerous acts." Resp. at 29. This argument, however, does not absolve Harman from pleading the particulars of *any* false claim. At most, it would excuse a relator from pleading with particularity *every* alleged false claim made, but the relator must still identify representative examples of the false claims with particularity. *See, e.g., United States ex rel. Hebert v. Dizney*, 295 Fed. Appx. 717, 723 (5th Cir. 2008) ("While we agree that Rule 9(b) does not require a *qui tam* plaintiff alleging a long-running scheme involving many false claims to list every false claim, its dates, [and] the individuals responsible, … the allegedly great extent and complexity of

---

[12] Likewise, if those purported certifications were forwarded to state governments, as Harman's conclusory allegations assert (Cplt. ¶ 38), those governmental agencies also would have such information.

12

a fraudulent scheme does not excuse a failure to plead at least one false claim with the requisite specificity."). Harman even concedes that he must "provide representative examples of specific fraudulent acts conducted pursuant to [the alleged fraudulent] scheme." Resp. at 30 (citing *United States ex. rel Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 768-69 (S.D. Tex. 2010)). Yet, Harman's Complaint does not identify a single example of a false certification with the particularity required by Rule 9(b).

**IV.  Harman Pleads No Causal Link Between Any False Statement and a Government Payment.**

Absent from Harman's Complaint are any facts linking Trinity's purported false certifications to private customers to a payment by the United States government. It is not sufficient for Harman to allege merely that Trinity made false certifications to private contractors without also alleging facts to show that the certifications were at least passed along to the United States government for payment. *See, e.g., United States ex rel. Patton v. Shaw Services, L.L.C.*, 418 Fed. Appx. 366, 369 (5th Cir. 2011). Yet, that is precisely what he does in his Complaint.

Harman's Complaint is devoid of any facts describing what, if anything, private purchasers of the ET-Plus submitted to states; what, if anything, states submitted to the federal government; or how payments or reimbursements were made. Nor does it describe how a claim or payment/reimbursement process may have worked. Instead, Harman asks the Court to assume—based on speculation alone—a causal connection between Trinity's alleged false certifications to customers and a payment by the United States government.

First, Harman contends that a May 21, 2012 FHWA guidance memo "unequivocally sets forth the direct link between such certifications and Federal reimbursement." Resp. at 15. But Harman points to nothing in that memo even purporting to require Trinity to make certifications to purchasers—and an inspection of it reveals no such requirement. In fact, that memorandum

13

addresses only one thing: the process for obtaining the initial FHWA acceptance of a highway safety product as eligible for federal reimbursement. It says nothing about what, if anything, should be submitted to customers (or to anyone else) to receive federal reimbursement payments, and Harman asserts that the statements Trinity made in connection with the FHWA's 2005 acceptance were not "the fraudulent statements that caused monies to be paid." *Id*. at 20.[13]

Second, Harman apparently asks the Court to infer from the mere presence of ET-Plus units on U.S. highways that the United States made payments based on Trinity's alleged false certifications to customers. Resp. at 20. The fact that ET-Plus units are present on highways says nothing about who paid for them, whether a state or the federal government reimbursed any of the cost for them, or what was submitted to the federal government, if anything, in connection with any request for payment, let alone that the government based any payment decisions on alleged false certifications made to private contractors some three steps removed.

## V. Harman Does Not Plead Materiality or Scienter.

Harman fails to allege that Trinity's purported false certifications were material to payment decisions by the United States government. *See United States ex rel. Longhi v. Lithium Power Techs, Inc.*, 575 F.3d 458, 468-69 (5th Cir. 2009); *United States v. Southland Mnmt. Corp.*, 326 F.3d 669, 676-77 (5th Cir. 2003). Harman now concedes that the only false statements he alleges as a basis for his FCA claim are Trinity's purported false certifications to customers that the ET-Plus products being sold "were the FHWA-approved version of that terminal." Resp. at 20. Yet, his Complaint is devoid of any facts showing how those alleged certifications were material under Rule 12(b)(6) or 9(b) standards.

---

[13] In any event, as discussed in footnote 8 above, the May 21, 2012 FHWA policy memorandum was issued after Harman filed this lawsuit, and Harman concedes that it is not applicable to any of the allegations in his Complaint. Resp. at 18. Further, the memorandum does not create any binding requirements. *See* 2012 FHWA policy memorandum (at Appendix A) ("This document is guidance. It is not a regulation and does not impose legally binding requirements on the FHWA or the States.").

Case 2:12-cv-00089-JRG Document 49 Filed 07/25/13 Page 16 of 19 PageID #: 698

Harman can point to no contract, regulation, or statute requiring such certifications for government payment or reimbursement. Moreover, Harman concedes in his Complaint that the FHWA has continued its acceptance of the ET-Plus with full knowledge of all of the changes Harman contends make Trinity's purported certifications false. *See* Cplt. ¶¶ 31-32; Mtn. at 30-31. It is, therefore, unclear how Trinity's alleged certifications of acceptance by the FHWA could have been material to a government payment decision—much less that they were false.[14]

Harman does not even address the scienter requirement in his Response, except in a rote assertion that "[h]e has specifically alleged … the requisite scienter …." Resp. at 24. To satisfy Rule 9(b), Harman cannot simply make conclusory allegations of intent, but must plead "specific facts that support an inference of fraud." *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 667 (5th Cir. 2004); *see also Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994). Harman's Complaint fails this basic legal principle (*see* Mtn. at 37-38).

## VI. Harman's FCA Claim Is Barred by the Statute of Limitations.

A relator must plead that a claim for payment was submitted to the government within the FCA's six-year limitations period. 31 U.S.C. § 3731(b); *Foster*, 587 F. Supp. 2d at 816. Trinity does not contend—as Harman misconstrues in his Response—that Harman's FCA claim is barred by limitations because Trinity's "alleged fraudulent conduct *began* more than six years ago." Resp. at 18 (emphasis added). Rather, Harman's FCA claim is barred because he does not

---

[14] While not directly addressing materiality, Harman argues that Trinity's alleged post-2005 changes to the ET-Plus have "never been disclosed to the FHWA" and that the FHWA has continued to accept the ET-Plus without full knowledge of those alleged changes. Resp. at 21-22. This argument contradicts Harman's own allegations both in his Complaint and in his Response. Specifically, the Complaint alleges that Harman himself notified the FHWA about Trinity's alleged changes to the ET-Plus in January 2012 and that he "has had numerous contacts with state and federal highway safety officials" regarding the allegations in his Complaint. Cplt. ¶¶ 31, 37. Further, in Harman's Declaration in support of his Response, he admits that "[i]n January 2012, I sent my 'Presentation' (which was substantially similar to my Amended Qui Tam Complaint at Exhibit A) to Nicholas Artimovich from the FHWA and informed him of my findings and provided a detailed compilation of these findings." Harman Decl. ¶ 12. It is also Harman who concedes in his Complaint that the "FHWA has continued to approve the use of the ET-Plus on the National Highway System …." Cplt. ¶ 32.

allege that any false claims were submitted to the government within the six-year limitations period. The only conduct Harman attempts to allege in his Complaint—which he now argues is not the basis for his FCA claim (Resp. at 20)—occurred in 2005. Thus, the only factual allegations made in Harman's Complaint are barred by the statute of limitations.

**VII.    Harman Does Not Plead Allegations Specific to Either Defendant.**

Harman concedes that he cannot plead a single allegation specific to either Trinity defendant, and his Complaint is fatally deficient for this reason. Resp. at 26 n.14. When there are multiple defendants, Rule 9(b) requires a plaintiff to plead fraud with particularity as to each defendant. *See* Mtn. at 39-40. Harman responds to this point only in a footnote, arguing without citation to any authority, that he does not have to satisfy Rule 9(b) as to each Trinity defendant: (1) because they are "inter-related entities"; and (2) because "information as to which entity or entities made these certifications is in Trinity's hands." Resp. at 26 n.14. Both of these arguments fail.

First, the Complaint does not allege a corporate relationship between the Trinity defendants, which is all the Court may consider on Trinity's Motion, and in any event, it is well-established that having a corporate relationship does not create liability under the FCA. *See, e.g.*, *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 59-63 (D.D.C. 2007); *In re Pharm. Indus. Average Wholesale Price Litig.*, 538 F. Supp. 2d 367, 391 (D. Mass. 2008). Second, information about what, if any, certifications were made to customers is equally available to Trinity's customers—including Harman's own companies, and, thus, Harman is not entitled to escape the requirements of Rule 9(b).

Dated: July 25, 2013

                                  Respectfully submitted,

                                  TRINITY INDUSTRIES, INC.
                                  TRINITY HIGHWAY PRODUCTS, LLC

| | |
|---|---|
| Russell C. Brown |    */s/ Sarah Teachout* |
| Texas Bar No. 03167510 | Ethan L. Shaw |
| THE LAW OFFICES OF | Texas Bar No. 18140480 |
| RUSSELL C. BROWN, P.C. | SHAW COWART LLP |
| P.O. Box 1780 | 1609 Shoal Creek Blvd., Ste. 100 |
| Henderson, Texas 75653-1780 | Austin, Texas 78701 |
| Telephone: (903) 657-8553 | Telephone: (512) 499-8900 |
| Fax: (903) 655-0218 | Fax: (512) 320-8906 |
| russell@rcbrownlaw.com | elshaw@shawcowart.com |
| | |
| J. Mark Mann | Sarah R. Teachout |
| Texas Bar No. 12926150 | Texas Bar No. 24008134 |
| MT2 LAW GROUP | Arnold Spencer |
| 300 West Main Street | Texas Bar No. 00791709 |
| Henderson, Texas 75652 | AKIN GUMP STRAUSS HAUER & FELD LLP |
| Telephone: (903) 657-8540 | 1700 Pacific Avenue, Suite 4100 |
| Fax: (903) 657-6003 | Dallas, TX 75201-4624 |
| mm@themannfirm.com | Telephone: (214) 969-2859 |
| | Fax: (214) 969-4343 |
| Mike Miller | steachout@akingump.com |
| Texas Bar No. 14101100 | aspencer@akingump.com |
| 201 W. Houston St. | |
| Marshall, Texas 75670 | Heather Bailey New |
| Telephone: (903) 938-4395 | Texas Bar No. 24007642 |
| Fax: (903)938-3360 | BELL NUNNALLY & MARTIN LLP |
| | 3232 McKinney Avenue, Suite 1400 |
| | Dallas, Texas 75204 |
| | Telephone: (214) 740-1425 |
| | Fax: (214) 740-1499 |
| | heathern@bellnunnally.com |

**Attorneys for Defendants, Trinity Industries, Inc. and Trinity Highway Products, LLC**

17

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served on counsel for all parties via the Court's CM/ECF system on this 25th day of July, 2013.

                                                /s/ Sarah Teachout