IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UNITED STATES EX REL. JOSHUA HARMAN, § § § § | |
| *Plaintiff*, § | |
| § | CASE NO. 2:12-CV-00089-JRG |
| *v.* § | |
| § | |
| TRINITY INDUSTRIES, INC., and § TRINITY HIGHWAY PRODUCTS, LLC, § § | |
| *Defendants*. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss (Dkt. No. 29), filed June 19, 2013. Defendants Trinity Industries, Inc. and Trinity Highway Products, LLC ("Trinity") argue that, in this False Claims Act (FCA) case, Relator Joshua Harman's ("Harman") Amended Complaint (Dkt. No. 22) fails on three grounds: first, Defendants argue that this Court lacks subject matter jurisdiction over the claim because Harman has failed to clear the "public disclosure bar" of 31 U.S.C. § 3730(e)(4)(A) (2006);[1] second, they argue that Relator has failed to state a claim under the False Claims Act, 31 U.S.C. §§ 3729-32, on several different theories; and third, Defendants argue that Relator has not met the heightened pleading standard for fraud under Fed. R. Civ. P. 9(b).

Having considered each of these arguments, the Court is of the opinion that Defendants' Motion should be **GRANTED IN PART AND DENIED IN PART**, for the reasons and as set forth below.

---

[1] Relator argues that a more recent version of the public disclosure bar applies; the Court addresses this issue below.

1

I. **FACTUAL BACKGROUND**

Harman's Amended Complaint alleges past and continuing violations of the False Claims Act by Defendants. Harman's contentions relate to Trinity's production of the ET-Plus guardrail end terminal ("ET-Plus"), a traffic safety product commonly seen on the nation's highways.[2] The ET-Plus affixes to the traffic-facing end of standard "W"-style highway guardrails. When struck in a head-on collision, the ET-Plus is designed to absorb and dissipate the impact of the collision by flattening the guardrail and extruding it into a ribbon that is deflected away from the collision. This process reduces the impact forces felt inside the vehicle, and the consequent threat to passengers' lives.

The ET-Plus makes use of certain patents owned by Texas A&M University. Texas A&M has granted Trinity an exclusive license to use these patents in the ET-Plus.

In order to be eligible for reimbursement for use on the National Highway System (NHS), equipment used on the NHS must first be approved by the Federal Highway Administration (FHWA). The ET-Plus, as originally designed, was approved by the FHWA in January 2000.

Sometime between 2002 and 2005, Trinity changed the design of the ET-Plus. The precise nature of these modifications is unimportant, but what is important is that Relator alleges the modifications were so substantial that the newer, modified ET-Plus no longer functions as intended. Instead of feeding the guardrail through the end terminal and extruding the rail into a ribbon, Harman claims, the new version locks up, folds over, and protrudes into oncoming vehicles. Trinity has sold these modified ET-Plus units since 2005.

---

[2] Many of these facts are undisputed, but unless otherwise noted the Court's summary relies on Plaintiff's pleaded facts in resolving this Motion to Dismiss. Specific factual findings with regard to jurisdiction are contained *infra* in Section II.B.

Trinity did not specifically disclose these changes to the FHWA and did not test the modified ET-Plus units according to FHWA protocols. They did, however, report the results of a crash test in 2005, in support of its petition for FHWA approval of the ET-Plus for certain Midwestern highways. It is disputed whether this 2005 test used a unit reflecting the disputed modifications. The FHWA approved Trinity's request.

In 2012, after Harman had started a publicity campaign to highlight the modified ET-Plus's alleged deficiencies, Trinity met with an official at the FHWA's Office of Engineering. Trinity apparently disclosed at least some of the engineering changes made. Importantly, Harman alleges that during this meeting Trinity represented to FHWA that the modified ET-Plus had been properly crash-tested on May 27, 2005. Harman claims that this was a false representation, and that the 2005 test did not adequately ensure the ET-Plus's safety.

## II. JURISDICTION

Trinity first argues that this Court lacks jurisdiction over this suit because the Relator's claim is "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, . . . or from the news media," and because Harman is not "an original source of the information." 31 U.S.C. § 3730(e)(4)(A) (2006). The Court finds that Harman is not subject to this "public disclosure bar" and that this Court has jurisdiction over Harman's claims.

### A. Legal Standard

The Parties' first dispute centers around which of two competing versions of the public disclosure bar applies in this case. Defendants argue that Relator's Complaint should be subject to a pre-2010 version of the bar, which reads:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing . . . or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4) (2006). Relator Harman, in contrast, argues for application of the statute as amended by Pub. L. 111-148 § 10104(j)(2) (124 Stat. 119, 901, Mar. 23, 2010):

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> > (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> >
> > . . . or
> >
> > (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4).

Neither party recognizes that both versions of the statute apply. Under the False Claims Act, liability attaches to each "claim" that meets the requirements of the Act—any "request or demand . . . for money or property" that makes its way to the public treasury. 31 U.S.C. § 3729(b)(2). Though the question of what constitutes a "claim" is complex, *United States v. Bornstein* establishes that each "causative act" by FCA defendants is a separate false claim. 423

4

U.S. 303, 308-13 (1976). Relator's Amended Complaint alleges that Trinity shipped "thousands" of modified ET-Plus units to customers beginning in 2005, and that fraudulent sales of the ET-Plus continue to this date (Dkt. No. 22, at 7, 13, 14). Relator's allegations thus span "claims" filed both before and after March 23, 2010. Consequently, each version of the public disclosure bar will govern a portion of the alleged claims in this case.

The Supreme Court has held specifically that a previous amendment to the public disclosure bar did not apply retroactively. *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946-52 (1997). The Court sees no substantive reason why the most recent amendment to the disclosure bar should be treated differently. Thus, claims accruing before March 23, 2010 (the effective date of the new disclosure bar) are subject to the old disclosure bar; claims accruing since that date are subject to the newer version of the statute.

Legal standards with respect to the pre-2010 version of the statute are well established. Jurisdictional questions must be resolved before other challenges. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). When defendants make a "factual attack" on the Court's jurisdiction and produce evidence to support their attack, plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence. *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 8, 1981). The Court "is given the authority to resolve factual disputes, along with the discretion to devise a method for making a determination with regard to the jurisdictional issue." *Moran*, 27 F.3d at 172.

Under the pre-2010 version of the statute, the Court retains jurisdiction unless (1) "there has been a 'public disclosure' of allegations or transactions," (2) "the *qui tam* action is 'based upon' such publicly disclosed allegations," and (3) the relator is *not* "the 'original source' of the information." *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d

346, 352 (5th Cir. 2003) (abrogated on other grounds by *Rockwell Intern. Corp. v. United States*, 549 U.S. 457 (2007)) (quoting 31 U.S.C. § 3730(e)(4)(A) (2000)). The disclosure bar is intended to "strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits"—advancing "twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 295, 310, (2010) (quoting *United States ex rel. Springfield Terminal R. Co. v Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994).

As far as this Court is aware, neither the Fifth Circuit Court of Appeals nor any other appellate court has undertaken a sustained analysis of the 2010 changes to the public disclosure bar. By its terms, the amendment makes several important changes. First, it recharacterizes the public disclosure bar as a ground for dismissal—effectively, an affirmative defense—rather than a jurisdictional bar. *Cf. United States ex rel. Lockey v. City of Dallas*, 2013 WL 268371, at *5 (N.D. Tex. Jan. 23, 2013) (discussing the affirmative defense standard). Thus, when considering Defendants' Motion to Dismiss under the new statute, Plaintiff's allegations are accepted as true and disputed facts are construed in Plaintiff's favor. *See Lowrey v. Texas A&M Univ. System*, 117 F.3d 242, 247 (5th Cir. 2006).

Second, the new statute replaces the old statute's "based upon" public disclosures test with a new test that asks whether the allegations in the complaint are "substantially the same" as allegations which have been publicly disclosed. The Parties appear to agree that, to the extent that there are public disclosures in this case, those disclosures meet the requirements of both tests, in that there is substantial overlap between the allegations in the complaint and the public

disclosures argued by Defendants. In the absence of such a dispute, the Court will not undertake to parse the differences between the two versions of this provision.

Third, the 2010 amendment eliminated the pre-2010 "direct and independent knowledge" requirement for qualifying as an "original source," extending the universe of original sources to both those who alert the government to the basis of the claim before public disclosure, and those who have independent knowledge that materially adds to publicly disclosed allegations. The 2010 amendment appears only to have expanded the definition of "original source"; thus, if a party would qualify as an original source under the pre-2010 statute, *a fortiori* that party would qualify under the 2010 amendments.

### B. Jurisdictional Facts

Since the pre-2010 public disclosure bar is jurisdictional in nature, the Court must resolve some initial factual disputes. Given the evidence submitted by the parties in support of this Motion and responses thereto, the Court finds the following facts:

The facts forming the basis of Harman's Complaint were available to the public before Harman filed his Complaint. The substance of the Complaint was disclosed in presentations Harman made to state highway officials and used in a related lawsuit; on a website Harman created to draw attention to failures of the ET-Plus; and in court documents produced in another related lawsuit. Sometime before March 6, 2012, Harman obtained through a Freedom of Information Act request a Trinity submission to FHWA, in support of 2005 modifications to the ET-Plus. The Court finds, however, that this document did *not* disclose the basis of Harman's claim, since Harman alleges that the report did *not* disclose the modifications that form the basis of the suit. Without additional knowledge that the ET-Plus had been modified, the 2005 submission alone would not disclose the basis for Harman's claim.

Defendants claim that Harman compiled the information in these disclosures "from public sources," citing as evidence Harman's statements in a different but related case. Harman responds that the statements were taken out of context, and that, having been sued by Trinity for infringing the patent on the ET-Plus, he learned "through [his] own inspection, that the design of the more recently installed ET-Plus guardrails differed significantly from the design of the ET-Plus that had been approved by the Federal Highway Administration" (Dkt. No. 41-2, at 2). Harman provides evidence that he "inspected approximately 100 crash sites in several states and took measurements of approximately 125 ET-Plus terminals on highways throughout the nation." *Id.* By "comparing the different ET-Plus units and applying the knowledge and experience [he] had from working . . . [Harman] determined that the units with the modified dimensions had not been approved by the Federal Highway Administration." *Id.* at 2-3. Over the course of the patent suit, Harman claims he confirmed in deposition testimony that Trinity had changed the dimensions of the ET-Plus after obtaining initial FHWA approval in 2000. The Court finds that Harman uncovered the bulk of the facts relating to his claim by (1) applying his professional skill and expertise to private and public documents brought to his attention in litigation;[3] and (2) personal investigation of ET-Plus units. The Court finds that no public disclosure or set of disclosures, in the absence of Harman's investigation, would have fully brought to light the basis of Harman's claims before Harman filed this suit, except those disclosures prepared by Harman himself from January to March, 2012.

---

[3] To the extent that Harman used public documents, the Court finds that these documents did not themselves disclose the basis of Harman's claim. Public documents may have been necessary for Harman to reach his conclusion—for instance, he may have compared the patents on which the ET-Plus is based with documents uncovered in litigation—but alone they were not sufficient to disclose the basis of Harman's claims.

Having developed his conclusions about the ET-Plus, it is undisputed that Harman sent a presentation to an FHWA official that summarized his findings in January 2012. Harman then filed this suit in March of 2012.

### C. Analysis

The Court having concluded that the first complete public disclosure of the basis of Harman's complaint was Harman's January 2012 presentation to the FHWA, prior to the filing of this lawsuit, the only question that remains for analysis is whether Harman is an "original source" within the meaning of the statute. Under both the pre-2010 and current versions of the statute, this Court concludes that Harman is a qualifying original source.

In order to qualify as an original source under the pre-2010 version of the statute, a relator must have "direct and independent knowledge of the information on which the allegations are based" and "voluntarily provide[] the information to the Government before filing an action." It is undisputed that Harman provided the government with a summary of his findings in the January 2012 report to FHWA. Thus, Harman's status as an original source depends on whether he satisfies the direct and independent knowledge prong of the statute.

The Fifth Circuit has interpreted the "direct" part of this prong as requiring "knowledge derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others." *Laird*, 336 F.3d at 355; *accord United States ex rel. Fried v. West Indep. Sch. Dist.*, 527 F.3d 439 (5th Cir. 2008). Additionally, the Fifth Circuit has held that "independent" knowledge is knowledge "not derived from the public disclosure." *United States ex rel. Reagan v. East Tex. Med. Ctr. Regional Healthcare System*, 384 F.3d 168, 177 (5th Cir. 2004).

Together, these requirements entail a "sweat of the brow" analysis, designed to distinguish between "individuals who, with no details regarding its whereabouts, simply stumble upon a seemingly lucrative nugget and those actually involved in the process of unearthing important information about a false or fraudulent claim." *Laird*, 336 F.3d at 356. The goal of the disclosure bar is to preserve meritorious investigation while eliminating "parasitic" lawsuits derived from the morning newspaper. *Graham Cnty.*, 559 U.S. at 295.

Trinity's argument boils down to a claim that Harman's knowledge does not qualify as "direct and independent" because Harman's investigation relied in part on *some* documents that were publicly available. Without these documents, the argument goes, Harman would lack the information needed to bring this suit; his claim is thus "derived from the public disclosure" and his knowledge is not "independent." Trinity cites *Fried* for the proposition that Harman's claims may not "depend or rely on public disclosures" and argue that this bars Harman's claim.

The Court disagrees. It would be extreme to find that a relator's knowledge was not "independent" because some fraction of the facts—a patent, a contract, a press release— are contained in public documents. These pieces of information are to a cause of action what bricks are to a wall, and a claim is not made parasitic by the public availability of a single brick. Defendants' overly narrow reading of this term is not supported by current authorities. *Fried*'s "depend or rely" language was clearly intended to capture, not all but-for causes of a relator's claims, but rather only proximate disclosures—those disclosures which fully reveal the *falsity* alleged in the cause of action. Hence *Reagan*'s formulation of "derived from *the* public disclosure"—i.e., that public disclosure which forms the basis of the suit's claims—rather than *a* or *any* public disclosure. 384 F.3d at 177 (emphasis added).

Here, Harman's knowledge is "direct" in the sense that a significant portion of his claim stems from personally-gathered information; this knowledge was gained through his own efforts, rather than by securing the benefits of efforts expended by others. Moreover, his knowledge is "independent" because the crux of his cause of action—the falseness of the claims he has targeted—was made plain only through his own efforts. Thus, Harman qualifies as an original source under the pre-2010 statute.

As noted above, the current "original source" language is less demanding than the one contained in the pre-2010 statute. The requirements of the statute are satisfied on the basis of Harman's "prior . . . voluntary disclos[ure] to the Government," as well as his "knowledge that is independent of and materially adds to the publicly disclosed allegations." Defendants have failed to show that Harman's case should be dismissed under the current version of the public disclosure bar.

Thus, the Court has jurisdiction over the entirety of Harman's cause of action. The Court notes that, though it has found as a matter of fact that Harman is an original source of his publicly disclosed claims, as of yet it has neither made inquiry into nor drawn conclusions regarding the validity of those claims.

Having disposed of the issue of jurisdiction, the Court now turns to Trinity's other arguments for dismissal.

## III.   STATING A CLAIM UNDER THE FALSE CLAIMS ACT

### A.   Legal Standards

Defendants next argue that Harman's Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because Harman has failed to state a claim under the False Claims Act. In resolving a Motion to Dismiss under Rule 12(b)(6), the Court must accept as true all well-

11

pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1993). A relator's allegations must be "plausible on [their] face" and may not merely offer "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state a claim under the False Claims Act, Harman must allege (1) that Defendants made or, by record or statement, caused to be made a claim for payment against the government; (2) that the claim, record, or statement was materially false or fraudulent; and (3) that the false or fraudulent claim, record, or statement was made knowingly by Defendants. *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 675 (5th Cir. 2002).

### B. Analysis

#### 1. *Allegations of a False Claim for Payment*

Defendants first argue that Harman has not alleged that Trinity either made a false claim for payment or caused such a claim to be made through its record or statement. In Defendants' view, Harman merely alleges that Trinity failed to follow federal regulations, a fault not punished under the FCA. *See United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 381 (5th Cir. 2003).

The Court disagrees and holds that Harman does allege a claim for payment. In fact, he alleges "thousands" of claims for payment. In particular, Harman alleges that

> every time Trinity sold the ET-Plus after the 2005 modifications, it necessarily provided a false certification that ET-Plus conformed to the unit that had been approved by the FHWA. Those certifications—made to every state—were required for the contractor-purchasers that would forward those certifications as part of their invoice in order to be entitled to payment from state or federal authorities. . . . Since 2005, thousands of dangerous and unapproved ET-Plus heads have been passed off by Trinity as approved by the FHWA and eligible for

>federal reimbursement to purchasers, state authorities, and, ultimately, the federal government.

(Dkt. No. 22, at 14). This allegation—that Trinity knowingly and falsely certified that their ET-Plus units were compliant with federal regulations, and that this certification caused state authorities to submit claims for payment to the federal government—is sufficient to dispose of Defendants' argument. *See Southland*, 288 F.3d at 678 ("While . . . a claim is not necessarily "false" simply because it involves a statutory violation, . . . a claim *is* necessarily false when it involves a knowingly false certification of compliance with a statute or regulation and that certification is a prerequisite to payment of the asserted claim.").

Defendants argue that Harman's pleading "on information and belief" as to Trinity's alleged false certifications is insufficiently specific to meet the heightened pleading standard under *Twombly* and *Iqbal* (Dkt. No. 29 at 21-23). Harman has a particular reason to include such a qualification. In an approval letter addressed to defendants in 2010, the FHWA noted that "[Defendants] will be expected to certify to potential users that the hardware furnished has essentially the same chemistry, mechanical properties, and geometry as that submitted for acceptance" (Dkt. No. 22, at 11). Though Harman may not have all the details of dates and language that might accompany these certifications, the FHWA letter supports Harman's claim that the certifications exist. Whether Trinity actually *did* make such certifications is an issue of fact, not presented here, but one that Harman will have to prove if he is to prevail in his case. It would be inappropriate, however, for the Court to refuse to allow discovery on this fact issue on the grounds of implausibility.[4]

---

[4] The Court is not ruling that "information and belief" alone would not support a finding of plausibility that a vendor had certified compliance with federal regulations; indeed such an allegation might be inherently plausible in a heavily-regulated field like highway equipment sales. However, here the FHWA letter is sufficient to support the plausibility of Harman's allegations.

13

Additionally, Harman alleges that the false certifications attaching to each sale of the ET-Plus are not the only material misrepresentations made by Defendants. Harman's Amended Complaint also alleges that Defendants made direct misrepresentations to the government concerning the safety and crash testing of the ET-Plus, and that these misrepresentations were material to the FHWA's continued approval of the ET-Plus (Dkt. No. 22, at 12). Taken as true, this allegation establishes a further basis for relief as to claims for reimbursement made after February of 2012.

2. *Statute of Limitations*

Trinity argues that Harman's claims are barred by the statute of limitations, which under the FCA is six years from the alleged violation. 31 U.S.C. § 3731(b). As noted above, each false claim for payment constitutes a separate violation of the FCA. Harman has alleged violations starting in 2005 and continuing through the present day. Relator's original complaint was filed on March 6, 2012. Therefore, violations accruing before March 6, 2006 are barred by the statute of limitations; Harman's cause of action with respect to all other claims is timely.

3. *Materiality*

Defendants also argue that Harman has not sufficiently alleged the materiality of Trinity's misrepresentations—that, in the absence of Defendants' false statements, the federal government would not have paid the claims anyway. They argue that, because the government is now on notice about the alleged changes to the ET-Plus and continues to approve it for reimbursement, its alleged misrepresentations are immaterial.

This argument conflates the two bases for Harman's complaint. First, with respect to Defendants' alleged false certifications, Harman has specifically alleged that these certifications were necessary both in order for state authorities to purchase the ET-Plus and to receive

14

reimbursement from the federal government. Such certifications are adequately presented to be material. If Trinity certified that the ET-Plus units sold were substantially the same as the unit that was approved by FHWA, and these certifications were necessary for reimbursement, and the units sold were *not* substantially the same, then Harman has stated a claim *even if* the units sold were later approved for sale. Second, Harman has alleged that the government's continued approval of the ET-Plus is based upon deliberate misrepresentations made by Defendants in February of 2012. Under this allegation, continued government approval of sales of ET-Plus would support and not conflict with a finding that Defendants' misrepresentations are material. The Court concludes that Harman has sufficiently alleged materiality.

    4.  *Preemption*

Defendants further argue that "Harman's FCA claims are nothing more than his personal disagreement with the FHWA's continued acceptance of the ET-Plus as eligible for federal reimbursement" (Dkt. No. 29, at 32). They argue that Harman cannot use the FCA to reverse the FHWA's policy decisions on reimbursement. This is true; however, Harman's complaint does not plead reversal of the FHWA's policy decisions. Instead, it alleges that Trinity knowingly made material false statements that caused claims for payment to be submitted to and approved by the federal government. As this is the essence of a cause of action under the FCA, Defendants' allegations about Harman's policy motives do not support dismissal of Harman's claim under their theory of preemption.

## IV. RULE 9(B) PLEADING

Finally, Defendants submit that Harman has failed to meet the heightened pleading requirements for fraud under Fed. R. Civ. P. 9(b), which requires parties to "state with particularity the circumstances constituting fraud." These standards have long applied to the

False Claims Act. *See United States ex rel. S v. Con'l Common, Inc.*, 553 F.3d 869, 872-73 (5th Cir. 2008). A relator "must set forth the who, what, when, where, and how of the alleged fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010). A relator need not "allege the details of an actually submitted false claim," but may instead "survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009).

Here, Harman's Complaint outlines a very particular set of factual circumstances meeting each required element of a claim for relief under the False Claims Act. It sets out the who (Trinity, state highway authorities, and the FHWA), the what (claims for reimbursement to the FHWA), the where (Trinity, the FHWA, and highways around the nation), the when (2005 to the present), and the how (substantial modifications to the ET-Plus coupled with false certifications that the modified units were substantially the same as originally approved units).

Harman's complaint meets the heightened pleading standards of Rule 9(b).

V.   CONCLUSION

The true gravamen of many of Defendants' arguments is that Harman's claims are factually inaccurate, and thus must, somehow, fail the requirements of Rules 12(b)(1), 12(b)(6), or 9(b). This position, though perhaps understandable in an age of heightened pleading standards, nonetheless mistakes the proper function of a motion to dismiss. At this stage of litigation (apart from limited jurisdictional inquiries) the Court evaluates only what the Amended Complaint *says* and evaluates its plausibility (as determined from the particularity of the pleadings) and sufficiency as a matter of law. Though Harman may at present be unable to prove his case by a

preponderance of the evidence, he is entitled to the material benefits of complete fact discovery before he is required to try.

Accordingly, it is therefore **ORDERED** that Defendants' motion (Dkt. No. 29) is **GRANTED IN PART AND DENIED IN PART**, in that all claims accruing before March 6, 2006 are hereby **DISMISSED WITH PREJUDICE** as untimely under the statute of limitations, as set forth at 31 U.S.C. § 3731(b). The remainder of Defendants' motion is **DENIED**.

**So ORDERED and SIGNED this 3rd day of January, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE