# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.<br>JOSHUA HARMAN,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TRINITY INDUSTRIES, INC, and<br>TRINITY HIGHWAY PROTDUCTS, LLC,<br><br>　　　　　Defendants. | Civil Action No. 2:12-CV-89 |

## DECLARATION OF CLARENCE DITLOW IN SUPPORT OF MOTION TO INTERVENE OF THE CENTER FOR AUTO SAFETY

I, CLARENCE DITLOW, hereby certify as follows:

1. I am the Executive Director of the Center for Auto Safety ("the Center") and have been since 1976. I have a B.S. degree in Chemical Engineering from Lehigh University (1965), a J.D. degree from the Georgetown University Law Center (1970), and an LL.M. degree from the Harvard Law School (1971). I am the author of numerous consumer publications including the "Lemon Book" (1980 and 1990 editions), which I co-authored with Ralph Nader, and "Little Secrets of the Auto Industry" (1994). I am the chief editor of "Automobile Design Liability," a six-volume work published by West, and supplemented annually, on state and federal regulation of the automobile, including all actions by the National Highway Traffic Safety Administration (NHTSA) and the Federal Trade Commission that affect motor vehicles.

2. The Center is a non-profit public interest organization founded by consumer advocate Ralph Nader and Consumers Union in 1970. The Center has over 15,000 members

nationwide. The Center is dedicated, among other matters, to promoting automobile and highway safety, to ensuring that defective and unsafe automobiles and automobile equipment are removed from the road, and that roads are safer for motor vehicles through safer designs and traffic controls. The Center provides information on safety hazards to alert the public, testifies before Congress and petitions federal agencies for remedial action on safety issues.

3. One of the means the Center uses to reduce the public's risk of injury on the highways is to educate the public about safety issues, and to serve as a clearinghouse for consumers and the media who want to obtain or report information on vehicle and highway safety issues. Each year, the Center receives more than 40,000 letters, telephone calls, and posts on its website from consumers and the media relating to these issues.

4. In 1974, the Center published "The Yellow Book Road: The Failure of America's Roadside Safety Program," a detailed analysis of the failure of the Federal Highway Administration (FHWA) and state highway departments to implement an effective roadside safety program. The Center followed up that report by working over the years since to improve roadside safety and design. Among its many accomplishments, the Center reached an agreement with the FHWA to cease the use of hazardous timber barriers in construction zones and to substitute concrete New Jersey barriers. Other Center highway safety activities have focused on bridge inspection, certification acceptance of state highway programs, speed limits and traffic control devices.

5. The Center has extensive experience with the American Association of State Highway and Transportation Officials (AASHTO) and FHWA. For example, a Center lawsuit established that AASHTO was an advisory committee to the FHWA under the Federal

Advisory Committee Act when utilized by FHWA. *Center for Auto Safety v. Cox*, 580 F.2d 689 (D.C. Cir. 1978). AASHTO publishes a comprehensive Highway Safety Manual (http://safety.fhwa.dot.gov/hsm/) which is utilized by FHWA in highway design.

6. The Center learned about the issue of the safety of the ET-Plus guard raid through www.failingheads.com. The issue is discussed by FHWA in a June 17, 2014 memo "ET-Plus W-Beam Guardrail Terminal" published at http://safety.fhwa.dot.gov/roadway_dept/policy_guide/road_hardware/memo_etplus_wbeam.cfm. The ET-Plus endcap was modified in 2005 but not disclosed to FHWA. The issue is whether the change from a 5" wide guide channel to a 4" wide guide channel made the ET-Plus a safety hazard.

7. The Center seeks to intervene in this matter because access to documents sealed in this proceeding would help determine whether the modified ET-Plus is safe or unsafe. Access to those documents would enable the Center to evaluate the issue and bring the facts to the public and FHWA as well as the Congress should there be hearings on the matter.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*(signature)*
CLARENCE DITLOW

Dated: Aug 13, 2014