IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA EX REL. JOSHUA HARMAN, | § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | CIVIL ACTION NO. 2:12-CV-0089 |
| TRINITY INDUSTRIES, INC. AND TRINITY HIGHWAY PRODUCTS, LLC, | | |
| Defendants. | | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION
FOR SANCTIONS AGAINST TRINITY AND TEXAS A&M**

On October 11, 2014 – two days before jury selection, and twelve months after discovery commenced in this FCA case – Plaintiff Joshua Harman filed an Emergency Motion for Sanctions (Dkt. 537) against Defendants Trinity Industries, Inc. and Trinity Highway Products, LLC (together "Trinity"), and against Non-party Texas A&M Transportation Institute ("Texas A&M"), for alleged violations of the Court's discovery orders. Plaintiff's Motion for Sanctions against Trinity is wholly without merit and should be denied, for the following reasons:

**INTRODUCTION**

Plaintiff seeks an order sanctioning Defendants for an alleged production deficiency *by a non-party*, when Defendants produced everything Trinity could find on the disputed pendulum tests after reasonable and diligent searches. Plaintiff argues that Defendants are responsible for the actions of non-party Texas A&M. However, Defendants had no duty to obtain and produce documents from Texas A&M. Plaintiff pursued discovery directly from non-party Texas A&M, and he cannot seek to punish a party for these non-party subpoena disputes.

1

Plaintiff requests a jury instruction that Defendants and Texas A&M withheld pendulum testing documents because they would (in the newest, tentative "opinion" by Brian Coon) show that the ET-Plus with 4-inch guide channels does not work properly. Because Texas A&M's pendulum tests did *not* impact the extruder head and the guide channels attached to the ET-Plus extruder head were *not* being tested, it would make for an illogical, incorrect and unduly harsh result if the Court instructed the jury (as Plaintiff seeks with this Motion) that these same pendulum tests "might" demonstrate ET-Plus head functionality. The remaining remedies proposed by Plaintiff fair no better.

## BACKGROUND

At its September 29, 2014 hearing on Plaintiff's Motion to Compel, the Court ordered *Texas A&M* —for the first time—to produce "unredacted copies of its test data—its post testing and its flared ET materials." September 29, 2014 Hearing Tr. at 102. Pursuant to the Court's ruling, Texas A&M produced all relevant information regarding bogie tests, static tests and pendulum testing, including an unredacted version of its crash test database, on October 6, 2014.[1] One week later, Harman filed the instant Motion seeking to punish both the Defendants and Texas A&M for making this supplemental production.

## ARGUMENT AND AUTHORITIES

**A.    Defendants Did Not Violate The Court's Orders.**

Defendants did not fail to comply with the Court's February, June, and September orders. (Dkt. 129, 246, 509 at 102-03.) In its February 25, 2014 Order, the Court instructed Defendants to produce responsive testing information regarding modified versions of the ET-Plus. *See* Order of February 25, 2014 (Dkt. 129) (excluding research and development information unrelated to

---

[1] As explained below, *Trinity* had already produced all such documents in its possession many months earlier.

the ET-Plus). Defendants complied with that order many months ago by producing materials related the experimental flared end terminal system that was never submitted for approval or commercialized. On March 3, 2014, Defendants produced documents relating to the 220513 test series, and then a supplemental set of additional documents were produced on June 27, 2014. These files, going back to 2003, included a 220513-P1 photograph and email between Trinity and Texas A&M (*see* THP-00108731 and 108732), photographs of tests (*see* THP-00052374 - 52443), and drawings and schematics of the flared system and anchoring components (*see* THP-00278858 - 278866). Trinity produced approximately 100 files that it could locate for these preliminary pendulum tests of an experimental flared anchoring system for a product that was never developed and marketed. And these files were, in fact, retrieved from an archive file on an obsolete computer, which required computer forensic tools to recover.

Trinity re-produced documents related to the 220513 pendulum test when Trinity produced the entire set of documents from the Virginia Patent Case to Plaintiff on April 8, 2014 (after Texas A&M made an initial production on March 3, 2014). These documents included an overview of multiple pendulum tests of a post used with the ET-Plus, with photographs and accelerometer data included (*see* TTI-00003971-91, previously produced in patent case and re-produced multiple times in this action). These documents also included quarterly reports regarding the 220513 testing series, including discussion of the pendulum testing and different anchoring components (*see* TTI-00004976, 4977, 5006, produced in patent case and re-produced multiple times in this FCA action).

**B.    Defendants Did Not Have A Duty To Produce Documents Pursuant To Discovery Directed To Non-Party Texas A&M.**

Plaintiff argues that, Defendants were somehow obligated to obtain the requested materials from Texas A&M and produce them to Plaintiff, even though Plaintiff actively

3

pursued—and received—those documents directly from Texas A&M via non-party discovery. There are some instances in which a party may be have a duty to produce not only all documents in its possession, but also documents within its practical control. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007). However, where the party seeking the documents has made efforts to obtain those documents from the third party in the first instance, no duty exists. As the Second Circuit explains, "it [is] fairly obvious that a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents." *Id*. The authorities cited by Plaintiff merely state the general rule without acknowledging that a party has no duty to obtain documents from a non-party after the party seeking discovery engages in third-party discovery with that non-party. That is exactly the case here. Moreover, Plaintiff's last-minute complaints (and Emergency Motion) *about Texas A&M* on the eve of trial are an obvious ploy seeking to impose duties and sanctions *on Trinity* that lack any logical nexus to any alleged compliance failure *by the Defendants*.

**C.    Plaintiff Has No Basis to Seek Sanction Against Defendants.**

Because Trinity had no duty to obtain documents from Texas A&M, where Plaintiff was seeking discovery directly from Texas A&M, there is no basis for Plaintiff to seek sanctions against Trinity for Texas A&M's alleged violation of discovery orders. Moreover, the sanctions that Plaintiff seeks are nonsensical.

First, Plaintiff asks this Court to impose a harsh sanction—instructing the jury that they can infer that Defendants did not produce the 2003 pendulum testing information because it would have supported the contention that the ET-Plus head with a four-inch channel does not work properly.

This remedy is nonsensical because the pendulum tests did not engage the head or involve the extrusion of rail and because Texas A&M produced the requested documents. *See* Declaration of Roger P. Bligh[2] ("Bligh Decl.") ¶¶ 2, 6, 7, 8 & 10. Therefore, it makes no sense to tell the jury that Texas A&M failed to produce pendulum tests, nor does it make sense to tell the jury that the tests support Plaintiff's argument that the four-inch ET-Plus does not work properly.

Moreover, Plaintiff does not cite a single case for the proposition that an adverse inference instruction is a proper remedy for anything outside the context of spoliation. And in seeking an adverse inference instruction, Plaintiff has not attempted to satisfy the requirements for obtaining that instruction. Plaintiff incorrectly argues that there is no requirement for establishing bad faith. But here, the remedy Plaintiff seeks for alleged violations of Rule 37(b) requires such a showing. It is axiomatic that adverse inference jury instructions are only given if the plaintiff can show that the defendant acted in "bad faith." *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir.2003). "[M]ere negligence is not enough" to warrant an adverse inference instruction. *See Vick v. Tex. Employment Com'n*, 514 F.2d 734, 737 (5th Cir.1975).

Here, there is no evidence that Defendants intentionally withheld information or intentionally violated a Court order. They did not. Nor is there evidence that Defendants acted in bad faith by allowing Texas A&M to handle its own third-party discovery disputes involving highly confidential and proprietary data. *See* Bligh Decl. at ¶ 2, 6, 7, 8.

Plaintiff also asks the Court to allow his expert, Dr. Coon, to opine on the significance of Texas A&M's experimental pendulum testing, while precluding Defendants from offering any of

---

[2] The Bligh Decl. was prepared by Texas A&M in support of its own Response to Plaintiff's Motion. Trinity is adopting the Bligh Decl. for the limited purpose of explaining to the Court why the pendulum testing should not be admitted for any purpose and the alleged discovery deficiencies by Texas A& do not warrant any relief.

its own expert opinion in rebuttal. This sanction combination should be rejected for at least two reasons. First, Plaintiff contends that sanctions are warranted because Plaintiff has been prejudiced by Texas A&M's allegedly late production, because it "comes too late for expert testimony, reports, or depositions." Dkt. No. 537 at 6–7. Yet Plaintiff wants this Court to permit Dr. Coon to opine on the supposed significance of this pendulum testing, suggesting Dr. Coon *had sufficient time* to properly formulate an opinion. Plaintiff wants to have it both ways—to get sanctions because the production "comes too late" for expert testimony, and then to impose as sanction the admission of expert testimony. But if the production was truly "too late" for Dr. Coon to adequately develop an expert opinion, then it is unclear why he should be permitted to offer an inadequate and undeveloped opinion; and if it is possible for Dr. Coon to adequately develop expert opinion regarding the pendulum testing, then Plaintiff has not been prejudiced by the allegedly late production, and no sanction is warranted.

Second, Plaintiff's requested remedy—that Dr. Coon be allowed to opine without any rebuttal from Trinity—runs counter to basic notions of fundamental fairness. Plaintiff cites no authority for such an unorthodox, unfair, and nonsensical sanction.

**D.      Texas A&M's Pendulum Testing Is Totally Irrelevant to the Central Issue in this Case – NCHRP Report 350 Compliance of the ET-Plus Extruder Head.**

In the Declaration of Brian A. Coon ("Coon Declaration") attached to Plaintiff's Emergency Motion, Dr. Coon opines that "TTI and Trinity were [pendulum] testing the 4-inch ET-PLUS with a new anchor bracket in the 2003 tests to increase the capacity of the anchor bracket." Coon Declaration ¶ 4. *See also id.* ¶ 2 ("TTI performed at least four pendulum tests on a 'narrowed' 4-inch chute in 2003."). Dr. Coon is mistaken, and his testimony offering these opinions would mislead the jury regarding the purpose and outcome of the disputed pendulum tests. The testing referenced in paragraphs 2 and 4 of the Coon Declaration involved pendulum

testing *of the posts and anchoring system* of an experimental flared end terminal system. Declaration of Roger P. Bligh ¶ 4 ("Bligh Declaration") (attached hereto as **Exhibit 1**). Texas A&M's pendulum tests did not engage the extruder head in any way, nor did the tests involve any extrusion of rail. *Id*. Texas A&M's pendulum tests did not impact the extruder head, and the guide channels attached to the ET-Plus extruder head were not being tested. *Id.*

Plaintiff's allegations in this case pertain to the ET-Plus extruder head guide channels, the testing of the ET-Plus System pursuant to NCHRP Report 350, and whether the ET-Plus extruder head (in particular) is compliant with the NCHRP Report 350 standards. Pendulum testing is not used for evaluating the ET-Plus System for NCHRP Report 350 compliance. Bligh Declaration ¶ 5. Rather, pendulum testing is used to evaluate components that might (after extensive research and development) be used in a commercialized system. *Id.*

The pendulum tests referenced in the Coon Declaration were testing the capabilities of experimental flared anchoring components, and the tested posts and anchor system were designed to address the issues of a flared system during a re-directional impact *downstream* from the extruder head. *Id.* ¶ 9. In particular, an anchor cable and experimental cable anchor bracket were attached to the first post and the first section of rail, respectively. *Id.* These components were not attached to the extruder head. *Id.* The pendulum tests were simulating the forces affecting the cable and the bracket (not the head) when a guardrail system is impacted well downstream from the head, and the deflection of the guardrail by the vehicle impact creates tension in the rail that pulls on the cable and the bracket (not the ET-Plus head). *Id.*

Dr. Coon's arguments regarding the significance of this pendulum testing (*see* paragraph 4 of the Coon Declaration) are simply incorrect. Bligh Declaration ¶ 10. The extruder head on the experimental flared end terminal system was not being tested. *Id.* The pendulum tests

7

involved pulling the guardrail to simulate a downstream impact on the guardrail beyond the extruder head. *Id.* No guardrail was extruded, intended to be extruded, or could have been extruded, making it impossible for the referenced pendulum tests to in any way assess extrusion forces on the ET-Plus head on the experimental flared system. *Id.* TTI's pendulum testing in series 220513-P was not used to assess the possible use of a 4-inch guide channel, or anything related to the extrusion forces of guardrail passing through the ET-Plus head. *Id.* (quoting Motion at 7 & Coon Declaration ¶ 4).

For all of these reasons, Plaintiff's attempt to use Texas A&M's alleged late production of pendulum tests to bolster his FCA case regarding the ET-Plus with 4-inch guide channels must be rejected. As explained by Dr. Roger Bligh, Plaintiff's expert (Brian Coon) has no basis to opine that Trinity was testing *the 4-inch channel* on the ET-Plus extruder head in 2003, or to conclude that these pendulum test results have anything to do with *the 4-inch channel*. On the contrary, the ET-Plus head was *never impacted* during the pendulum testing, and the head did not extrude any guardrail. Allowing Dr. Coon to offer these junk science opinions – unrebutted by Defendants or the engineers at Texas A&M who have first-hand knowledge of such testing by this non-party – would be a prejudicial and unjust outcome. Texas A&M produced the materials requested, and Defendants should not be sanctioned for the timing of this *non-party* production following Texas A&M's strenuous and continual objections to discovery of any confidential and proprietary testing of components (not heads).

## CONCLUSION

Defendants did not withhold any of the pendulum testing at issue in Plaintiff's Emergency Motion. Defendants are not responsible for compelling production of these documents in Texas A&M's control when Plaintiff is already engaged in non-party discovery with Texas A&M. Finally, Plaintiff's proposed remedies have no basis in law or fact. For all of

these reasons, Defendants request that the Court deny Plaintiff's Emergency Motion for Sanctions.

Dated: October 13, 2014

Respectfully submitted,

 */s/ Sarah R. Teachout*

Russell C. Brown, Esq.
Texas Bar No. 03167510
THE LAW OFFICES OF
RUSSELL C. BROWN, P.C.
P.O. Box 1780
Henderson, Texas 75653-1780
Telephone: 903.657.8553
Fax: 903.655.0218
russell@rcbrownlaw.com

J. Mark Mann, Esq.
Texas Bar No. 12926150
MT2 LAW GROUP
300 West Main Street
Henderson, Texas 75652
Telephone: (903) 657-8540
Fax: (903) 657-6003
mark@themannfirm.com

Mike Miller
Texas Bar No. 14101100
201 W. Houston St.
Marshall, Texas 75670
Telephone: (903) 938-4395
Fax: (903) 938-3360
mikem@millerfirm.com

Heather Bailey New
Texas Bar No. 24007642
BELL NUNNALLY & MARTIN LLP
3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204
Telephone: (214) 740-1425
Fax: (214) 740-1499
heathern@bellnunnally.com

James C. Ho, Texas Bar No. 24052766
Robert A. Vincent, Texas Bar No. 24056474

Ethan L. Shaw
Texas Bar No. 18140480
SHAW COWART LLP
1609 Shoal Creek Blvd., Ste. 100
Austin, Texas 78701
Telephone: (512) 499-8900
Fax: (512) 320-8906
elshaw@shawcowart.com

Sarah R. Teachout
Texas Bar No. 24008134
Arnold Spencer
Texas Bar No. 00791709
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4624
Telephone: 214-969-2800
Fax: 214-969-434
steachout@akingump.com
aspencer@akingump.com

Robert M. (Randy) Roach, Jr.
Texas Bar No. 16969100
John W. Newton, III
Texas Bar No. 14983300
Manuel López
Texas Bar No. 00784495
ROACH & NEWTON, LLP
1111 Bagby Street, Suite 2650
Houston, Texas 77002
Telephone: (713) 652-2032
Facsimile: (713) 652-2029
rroach@roachnewton.com
jnewton@roachnewton.com
mlopez@roachnewton.com

**Attorneys for Defendants, Trinity**

9

GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Ave., Suite 1100
Dallas, Texas 75201
Telephone: (212) 351-4000
jho@gibsondunn.com
rvincent@gibsondunn.com

**Industries, Inc. and Trinity Highway Products, LLC**

## CERTIFICATE OF SERVICE

     The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service on October 13, 2014.

                                                   */s/ Sarah R. Teachout*